[No. 36538. Department One. February 21, 1963.]

HANS T. JORGENSEN *et al., Appellants,* v. CLARENCE F. MASSART *et al., Respondents.**

*Reported in 378 P. (2d) 941.

492

*John L. Hay,* for appellants.

*Robert I. Odom, Bruce Maines, George G. Bovingdon,* and *Clarke, Clarke, Albertson & Bovingdon,* for respondents.

HILL, J.—This is an appeal from a summary judgment dismissing an action for damages.

The factual situation presented to the trial court on the motion for summary judgment, based on the pleadings, a deposition and affidavits, was as follows:

The plaintiff, Gertrude Jorgensen, went to lunch with her married daughter. When they returned to the Jorgensen apartment, they found water on the floor of the kitchen and it was just beginning to spread to the living room. They moved some furniture, rolled back a rug, and "dammed" the water with towels and bath mats, thus preventing the encroachment of the water into the living room. The rug and furnishings belonged to the plaintiffs. The damming operation was not completely effective, as some "did trickle out and went down the hall and to the guest closet."

The water came from a water line fitting broken by the representatives of the defendant plumbing company while installing a hot water tank in an apartment adjacent to that of the Jorgensens, and the water escaped until such time as it could be shut off at the meter.

Mrs. Jorgensen and her daughter did nothing further until the water was shut off, but did report the fact that there was water in the apartment to the wife of the manager of the apartment.

It is conceded that no one asked Mrs. Jorgensen to clear the water from the kitchen floor and that 30 to 40 minutes elapsed from the time that she discovered the water before she undertook, entirely on her own volition, the work of mopping it up.

She prepared herself for that work by changing her clothes, putting on a pair of jeans and a sweat shirt, and canvas deck shoes with rubber soles. The method used in getting the water off the kitchen floor was to sop it with towels, wring the towels out in a large container, and then empty the contents of the container into the sink. This continued from some time "after 2:00, probably 2:15, 2:30," until about 4:00 o'clock. Her hands and feet were in the cold water during all of that time.

There is no showing that Mrs. Jorgensen asked the plumbing company or the owner of the apartment to do anything about clearing the water out of her apartment; nor is there any showing that either of them offered to do anything about the situation, except that Mrs. Jorgensen in her deposition testified:

". . . As I was about through a man from the plumbing shop came in and wanted to know if he could give us some help, and I said, 'No, I've got it licked now.'"

She contracted laryngitis and was hospitalized, allegedly as a result of her contact with the cold water. The action was against the plumbing company, which was doing the work, and the owners of the apartment for damages sustained in consequence of Mrs. Jorgensen's exposure to the cold water.

It is the position of the defendants here, that if it is assumed that there is a jury question, as to the negligence of the defendants, that this is a classic example of volenti non fit injuria and that, in any event, Mrs. Jorgensen was contributorily negligent as a matter of law.

We explained that maxim in *Walsh v. West Coast Coal Mines* (1948), 31 Wn. (2d) 396, 407, 411, 197 P. (2d) 233, 239, quoting from *Gover v. Central Vermont R. Co.* (1922), 96 Vt. 208, 118 Atl. 874:

" 'If one knowing and comprehending the danger voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto.' "

And, by way of further explanation, we quoted from *White v. McVicker* (1933), 216 Iowa 90, 246 N. W. 385:

" 'The sum total of the application of this doctrine simply stated is that, where one is placed in the position where he has his choice of doing or not doing a given act, this doctrine applies.' "

We have here neither life, limb, nor property being endangered. We have no hasty or impulsive action. At least 30 minutes and perhaps "close to an hour," elapsed between the discovery of the water on the kitchen floor and the decision to "sop" it up. There was a change of clothes in preparation for that work.

This states the case as strongly as it can be stated for the defendants here. However, there remains the question as to what reasonable election or alternative was left to the plaintiff.

 The issues raised by this appeal included the three questions asked in *Kingwell v. Hart* (1954), 45 Wn. (2d) 401, 405, 406, 275 P. (2d) 431, 434, 435. The first two, *i.e.*,

" . . . Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it (*'voluntarily' including the meaning that defendant's conduct has left plaintiff a reasonable election or alternative. See Emerick v. Mayr, 39 Wn. (2d) 23, 25, 234 P. (2d) 1079 (1951)*), . . ." (Italics ours)

must be answered in the affirmative to establish the defense of volenti non fit injuria. And the third question,

" . . . (3) was the exposure unreasonable, that is, was it such that a reasonable person in plaintiff's position would not expose himself to it, or, after accepting a reasonable risk, did plaintiff exercise proper care for his own protection against that risk."

must be answered in the affirmative to establish contributory negligence.

It is apparent that Mrs. Jorgensen, after stopping the flow of water into the living room and confining it to the kitchen, did not impetuously, hastily, or inadvisedly enter into the project of removing the water. She waited for the running water to be cut off, then arrayed herself for the task. The remaining question is: did she have a reasonable election or alternative.[1] If she didn't sop or mop up this water, which had flooded her kitchen, who was going to do it. She was confronted with the further question of how long her dam of towels and bath mats would be effective.

■ It may well be that, if tried, there would be testimony that as soon as they had remedied the more emergent condition in the apartment, where the water connection had broken, the defendants would have taken care of the situation in the Jorgensen apartment, had she waited. The offer of assistance from the plumbing company employee, to which we have referred, might be some indication that such would have been the case. But that is all conjecture; there is no suggestion of it in the record; and if that was so, how was Mrs. Jorgensen to know it. Enough has been said to indicate that, in our opinion, there was a question of fact: Did Mrs. Jorgensen have a reasonable alternative? This a jury would have to pass upon before the defendants could establish their defense of volenti non fit injuria.

■ The test, on the issue of contributory negligence, was whether a reasonable person in the plaintiff's position would have exposed himself to the risks inherent in mopping and sopping up the water on the kitchen floor; and, if after accepting a reasonable risk, the plaintiff exercised proper care for his own protection against that risk.

The Restatement says:

"It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm." Restatement, Torts § 472 (1934);

[1]See *Handler v. Osman* (1962), 60 Wn. (2d) 800, 804, 376 P. (2d) 439, 442.

and, in the next section:

"If the defendant's negligence has made the plaintiff's exercise of a right or privilege impossible unless he knowingly exposes himself to a risk of bodily harm, the plaintiff is not guilty of contributory negligence in so doing unless the risk is unreasonable." Restatement, Torts § 473 (1934).

Mrs. Jorgensen's right to the use of her kitchen is apparent. We are satisfied that whether a reasonably prudent and cautious individual, in like circumstances, would have proceeded to get the water off the kitchen floor, is a jury question; and we so hold.

 The defendants also urge, in support of the summary judgment of dismissal, that the laryngitis of the plaintiff was an injury which could not have been foreseen or reasonably anticipated as the probable result of any negligence for which they may be responsible. They cite, and rely on, *Ottevaere v. Spokane* (1916), 89 Wash. 681, 155 Pac. 146.

We have approached foreseeability with telescopic lenses since *Ottevaere* and 1916. See *Orcutt v. Spokane Cy.* (1961), 58 Wn. (2d) 846, 364 P. (2d) 1102; *McLeod v. Grant Cy. School Dist.* (1953), 42 Wn. (2d) 316, 322, 255 P. (2d) 360; *Berglund v. Spokane Cy.* (1940), 4 Wn. (2d) 309, 319, 103 P. (2d) 355; *Frazee v. Western Dairy Products* (1935), 182 Wash. 578, 47 P. (2d) 1037.

In the *Berglund* and *McLeod* cases we quoted Harper (1938), Torts § 7, p. 15:

" . . . The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present."

As early as 1917 we were distinguishing the *Ottevaere* case in *Hellan v. Supply Laundry Co.* (1917), 94 Wash. 683, 689, 163 Pac. 9, saying:

" . . . This court, in common with some others, has said that 'any injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable,' in that the act is too remote

to be a proximate cause. *Ottevaere v. Spokane,* 89 Wash. 681, 155 Pac. 146. But that language must not be taken in an absolute sense. It does not mean that the probability of injury must be so obvious as to be necessarily anticipated by the wrongdoer, nor does it mean that he must have reasonably anticipated that injury would probably result to the exact person or in the exact form or way in which it did result. . . . "

We certainly can not, on the record before us, say that the laryngitis of the plaintiff could not have been foreseen or reasonably anticipated as a result of the flooding of the plaintiff's kitchen, which for the purposes of this opinion we have assumed to be the result of the negligence of the defendants.

█ The defendants had the burden, as the party moving for a summary judgment, to show that there were no genuine issues of fact. *Preston v. Duncan* (1960), 55 Wn. (2d) 678, 349 P. (2d) 605. This they failed to do.

The summary judgment of dismissal is reversed.

WEAVER, ROSELLINI, HUNTER, and HALE, JJ., concur.