[No. 38993.   Department Two.   May 9, 1968.]

KENNETH DETRICK et al., *Respondents,* v. GARRETSON PACKING COMPANY, *Appellant.*[*]

*Richard C. Smith* (of *Smith, Scott & Morthland*), for appellant.

*Jackson, Ulvestad & Goodwin,* for respondents.

[*]Reported in 440 P.2d 834.

NEILL, J.—Plaintiffs, respondents herein, bring an action for personal injuries suffered by plaintiff husband, who will be referred to as the plaintiff. At the time of the accident, plaintiff was a truck driver for Lloyd Varco, doing business as Varco Truck Lines, who was engaged exclusively in hauling cull apples for Tree Top, Inc., a fruit processor operating a large juicing plant near Selah. Plaintiff's duties included assisting in the loading and unloading of the cull apples into and from the truck. Tree Top, Inc., buys cull apples from growers throughout the area and arranges through Varco to have them hauled to its juicing plant. Defendant Garretson Packing Company operates a fruit ranch and packing warehouse northwest of Yakima.

Plaintiff's amended complaint alleges negligence of the Lloyd Garretson company in utilizing and operating a fork lift and joined Tree Top, Inc., as a defendant, alleging negligence in the design and construction of the bins used in the truck loading operation. Defendant Garretson cross-claimed against Tree Top and Varco, asking indemnity. Tree Top was dismissed from the action on summary judgment. At the close of the trial, Varco was dismissed on the ground that he was plaintiff's employer in extra-hazardous employment and has full protection against suit arising out of injury to his own workmen. Accordingly, the jury was given only the action of plaintiff against defendant Garretson.

Defendant Garretson, in its answer, set forth three affirmative defenses: first, that plaintiff had waived his rights to sue the third party by electing to take benefits under the workmen's compensation act; second, the defense of contributory negligence; and third, the defenses of volenti non fit injuria and assumption of risk. The trial court refused to admit evidence relating to the defense of election under the workmen's compensation act and that defense was not submitted to the jury. The jury returned a verdict for defendant Garretson, but the trial court granted plaintiff a new trial on the grounds that it erred in submitting the issue of volenti non fit injuria to the jury.

Defendant Garretson appeals from the order granting plaintiff a new trial alleging as error: (1) the granting of a new trial; (2) failing to direct a verdict for defendant; (3) refusing to admit evidence to establish plaintiff's election under the workmen's compensation act.

In order to understand the issues thus raised, it is necessary to set forth in some detail the facts giving rise to this litigation.

Defendant stored its cull apples in 4-foot-square wooden bins which have a sloping floor and a trap door arrangement on the front. Defendant's employee operated a fork lift with which he would raise the bin full of apples a sufficient height to permit the bin to clear the solid sideboards of the truck bed. The operator would then tilt the fork lift mast forward so the bin was poised above the truck bed. The operator could not see through the solid sideboards of the truck so it was plaintiff's duty to advise him as to the placement of the bin above the truck bed. When the bin was thus in place, the plaintiff was to open the trap door to permit the apples to roll out of the bin into the truck bed. While plaintiff was engaged in this latter operation, the loaded bin slid forward off the fork lift tines. The bin struck plaintiff on the right side of his chest, pushing him off the top of the partially loaded truck, over the side, and onto the ground on the side of the truck away from the fork lift operator.

The testimony is far from consistent as to the exact manner in which the accident occurred. Further, there is disparity in the evidence as to plaintiff's knowledge of the danger and risks involved in these loading duties. Plaintiff first testified that the accident occurred on his first day of employment, but later admitted that it was his sixth day of employment, but his first in actual loading with these bins. Plaintiff admits that he was instructed by his employer not to stand in front of the bins; that he clearly understood the hazard of being in front of a loaded bin; could neither admit nor deny that his employer instructed him to use a steel bar to open the trap door of the bin; that the method

of loading used was the standard method in the community; and that there was nothing unusual in the manner in which this particular bin was handled.

On the day of the accident, plaintiff had driven the truck to defendant's warehouse to be loaded with cull apples. He and defendant's fork lift operator had dumped several bins onto the truck so the apples were well "coned up" in the bed of the truck. Defendant's fork lift operator testified that plaintiff then stood in the truck at the place he wanted the next bin dumped and he, the operator, lifted the bin into position, tilted the mast forward about 6 degrees—the maximum the machine would tilt—and that the bin simply kept right on going, sliding off the end of the fork tines and into the truck. The operator next saw plaintiff on the ground on the other side of the truck. The operator testified that he was experienced, that he had never lost a bin from his lift before, and that he operated the lift in the usual manner.

Conversely, plaintiff testified that he stood on the cab of the truck while directing the operator where to position the load, and remained on the cab roof until the operator had completed the lift, and the tilt and the motion of the bin had completely stopped. He thereupon approached the bin by walking on the apples in the truck, positioned himself alongside the bin with his right leg in front of the bin and reached around in front of the bin to open the trap door with his hand. In so doing, he leaned against the bin and exerted pressure on the trap door latch. The bin then slid forward, striking plaintiff in the chest and pushing him off the truck.

Following the accident, plaintiff filed a claim for industrial insurance under the workmen's compensation act. He signed the form provided by the state whereon he indicated his election to receive benefits under the act and assigned his third party claim to the state. Subsequent to the commencement of this litigation, he filed a second and similar form, but this time he indicated his election to bring a third party suit. The state has not objected to this change of

election. However, in view of our disposition of defendant's first assignment of error, we do not reach the issue of election of remedies in the instant case.

■ The granting of a new trial on the ground that the trial court erred in submitting the defense of volenti non fit injuria to the jury forms the basis for defendant's first assignment of error. As already mentioned, the defenses of contributory negligence and "volenti" were both raised by defendant. We have repeatedly held that these two defenses, as well as the defense of assumption of the risk, are separate and distinct and that each is available in a particular case if warranted by the facts. *Walsh v. West Coast Coal Mines, Inc.*, 31 Wn.2d 396, 405, 197 P.2d 233 (1948). As noted by the trial court in the case at bar, our recent decision in *Siragusa v. Swedish Hosp.*, 60 Wn.2d 310, 373 P.2d 767 (1962), did eliminate the defense of assumption of the risk in cases involving a master-servant relationship. The holding in *Siragusa*, however, has no application in the instant case for here we are concerned with an invitee's claim of vicarious liability on the part of a landlord, to which claim the defenses of contributory negligence and "volenti" are both available if sustained by the proof. The distinction between these two defenses is well stated in our holding in *Kingwell v. Hart*, 45 Wn.2d 401, 405, 275 P.2d 431 (1954):

> The defenses of contributory negligence, assumption of risk, and *volenti non fit injuria* are discussed and differentiated in previous opinions of this court, the last being *Ewer v. Johnson*, 44 Wn. (2d) 746, 758, 270 P. (2d) 813 (1954), and case cited. The doctrine of assumption of risk, as it is ordinarily understood, is not applicable in a tort case like the one at bar, because of the absence of master and servant or other contractual relationships. If it be designated "voluntary exposure to unreasonable risk," the connotation is more nearly correct, in that it implies the element of willful assent expressed by the maxim *volenti non fit injuria*—no wrong is done to one who consents. But the latter maxim applies independently of any contractual relationship or of any negligence of the plaintiff or defendant. Contributory negligence or unreasonable conduct on the part of the plaintiff in view

of the foreseeable risk, may be confused with the latter defense, where no real consent to relieve defendant of any duty can be found, but plaintiff has exposed himself voluntarily to an appreciated and known unreasonable risk. In other words, an added inquiry appears if contributory negligence also is asserted, that is, was plaintiff's own conduct under the circumstances unreasonable, in view of the foreseeable risk, so that it can be said that there was a breach of duty on the part of the injured person. More than one of these defenses are available to a defendant if pleaded and proven.

It follows that the inquiry in a tort case, presenting the issues raised on this appeal, may include three questions: Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it ("voluntarily" including the meaning that defendant's conduct has left plaintiff a reasonable election or alternative. See *Emerick v. Mayr*, 39 Wn. (2d) 23, 25, 234 P. (2d) 1079 (1951)), and (3) was the exposure unreasonable, that is, was it such that a reasonable person in plaintiff's position would not expose himself to it, or, after accepting a reasonable risk, did plaintiff exercise proper care for his own protection against that risk.

If the first two questions are answered affirmatively, the defense under the "*volenti*" maxim is established regardless of negligence. If the record is such that no real consent to relieve defendant of any duty can be found, and the issues are framed as they are here, the third question must be examined. If it is answered affirmatively, the defense of contributory negligence is established. . . . The burden of proof is upon defendant to establish the elements of these defenses.

■ Whether plaintiff had the requisite knowledge of the danger and whether he voluntarily consented to his exposure to such danger are questions normally left for the jury to answer. As stated in 2 Harper & James, The Law of Torts § 21.7 (1956), relied on by defendant:

But the application of that rule to the specific facts in evidence is properly a jury function, subject to the usual limit that a jury verdict may not stand if it necessarily involves a finding that the court believes reasonable men could not make.

See also, *Mitchell v. Rogers*, 37 Wn.2d 630, 225 P.2d 1074 (1950); *Ewer v. Johnson*, 44 Wn.2d 746, 270 P.2d 813 (1954); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 372 P.2d 193 (1962); *Jorgensen v. Massart*, 61 Wn.2d 491, 378 P.2d 941 (1963); *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964); *Cockle v. General Elec. Co.*, 70 Wn.2d 846, 425 P.2d 665 (1967).

In granting a new trial, the trial court in the instant case ruled that as a matter of law plaintiff did not voluntarily expose himself to the known danger because he did not have a reasonable alternative by which he could perform his duties without exposure to such danger. Our task, therefore, is to review the record and determine whether there was sufficient evidence to warrant submitting this issue to the jury.

With respect to plaintiff's knowledge and appreciation of the danger or risk involved the evidence established that: (1) plaintiff knew the bins and forks became slippery from the juice of the apples, and saw moisture on the bins and forks on the day of the accident; (2) plaintiff had worked at this operation for a week before the accident and admitted that he therefore would probably have been familiar with the operation prior to the accident; (3) plaintiff admitted he knew that it would be risky to stand in front of the bin, although he did not recall his employer's instructions on this point; and (4) plaintiff admitted that he had seen fork lift "pallets" slide off fork lifts before starting work with his employer. We therefore believe that plaintiff clearly had the knowledge of appreciation of the danger required for the application of "volenti".

With respect to whether plaintiff voluntarily exposed himself to such danger, or more specifically whether the use of a metal bar to open the bins was a reasonable alternative to the method used by plaintiff (*i.e.*, the use of his hand), the evidence is in conflict. Supporting the proposition that plaintiff had a reasonable alternative is the following evidence: (1) plaintiff's employer testified that all truck drivers working for him are provided with 2-foot-long metal bars to use in opening the latch on the bins; (2)

plaintiff's employer testified that he had instructed plaintiff not to get in front of the bins and to use the metal bar; (3) the latch was in the center of the bin about 2 feet from the edge and the metal bar was 2 feet long; (4) when the accident occurred, plaintiff had reached around in front of the bin and opened the latch with his right hand, with his left hand resting on the side of the bin and his right foot in front of the bin; (5) in demonstrating in court how he opened the bin, plaintiff admitted most of his upper body was in front of the bin; (6) when the bin slid off the forks, it hit plaintiff on the right portion of the chest; (7) although admitting that the loose, juicy apples in the truck bed made standing difficult, plaintiff's employer testified that there were chains across the top of the truck sideboards holding the sides together and that plaintiff could have used these chains as support; (8) plaintiff's employer testified that the purpose of instructing plaintiff to use the metal bar in opening the bins was to avoid the necessity of his having to stand in front of the bins and that using the metal bar as instructed would, in fact, accomplish this purpose; and (9) plaintiff's employer testified that the bins always slid straight off the forks and not off to one side.

Supporting the plaintiff's claim that he did not have a reasonable alternative is the following evidence: (1) plaintiff did not recall his employer instructing him with respect to the danger of standing in front of the bins or the use of the metal bar, but he would not deny that such instructions had been given; (2) plaintiff could not recall whether the metal bar was in the truck, but he would not deny that it was; (3) plaintiff testified that using the bar did not place him in any different position with respect to the bins than using his hand; and (4) plaintiff testified that the bar was not necessary to open the bins.

We believe there was sufficient evidence concerning an alternative procedure available to plaintiff as well as with respect to plaintiff's knowledge and understanding of the danger to create a jury issue. Accordingly, the instruction on the defense of volenti non fit injuria was properly given.

■ We are not unmindful of the rule that the granting or denial of a motion for a new trial is within the sound discretion of the trial court, and this court will not intervene unless it can be shown that the trial court manifestly abused its discretion. *Coats v. Lee & Eastes, Inc.,* 51 Wn.2d 542, 320 P.2d 292 (1958); *Skov v. MacKenzie-Richardson, Inc.,* 48 Wn.2d 710, 296 P.2d 521 (1956). Further, a much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying a new trial. *Riley v. Department of Labor & Indus.,* 51 Wn.2d 438, 319 P.2d 549 (1957); *Johnson v. Howard,* 45 Wn.2d 433, 275 P.2d 736 (1954); *McUne v. Fuqua,* 42 Wn.2d 65, 253 P.2d 632 (1953); *Nelson v. Martinson,* 52 Wn.2d 684, 328 P.2d 703 (1958). However, it is important to recognize that the "abuse of discretion" rule is applicable only when the grounds on which the trial court grants a new trial are based on an exercise of discretion. Thus a more accurate statement of the rule governing this court's review of the granting or denial of a motion for new trial is contained in *Johnson v. Howard, supra,* at 436:

> [A]n order granting or denying a new trial is not to be reversed, except for an abuse of discretion. *Huntington v. Clallam Grain Co.,* 175 Wash. 310, 27 P. (2d) 583. This principle is subject to the limitation that, to the extent that such an order is predicated upon rulings as to the law, such as those involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved.

Thus, the granting of a new trial on the ground that the verdict was so excessive as to unmistakably indicate that it was the product of passion or prejudice is, of course, a matter within the discretion of the trial court, but such an order can and should be set aside where there is a manifest abuse of discretion. *Coleman v. George,* 62 Wn.2d 840, 384 P.2d 871 (1963). On the other hand, when the grounds given by the trial court for granting a new trial are predicated upon questions of law, such as involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved. In this case, this court

must consider whether the grounds relied on by the trial court are supported by the applicable legal principles and decisions. *Lyster v. Metzger,* 68 Wn.2d 216, 412 P.2d 340 (1966). See also, *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964); *Worthington v. Caldwell,* 65 Wn.2d 269, 396 P.2d 797 (1964); *O'Brien v. Seattle,* 52 Wn.2d 543, 327 P.2d 433 (1958).

█ In the instant case, therefore, our inquiry should be whether the reason given by the trial court in granting the new trial involved the exercise of discretion or whether the reason was predicated on a question of law. In *Owens v. Young,* 59 Wn.2d 30, 36, 365 P.2d 774 (1961), we held:

> Whether one's conduct meets the test of that of a reasonably prudent person, under the facts, is normally a question of fact for determination by the jury. *Key v. Reiswig,* 55 Wn. (2d) 512, 348 P. (2d) 410 (1960).
>
> We have said that only in the clearest cases is the court justified in determining that minds of reasonable men could not differ, and in deciding the issue of contributory negligence as a matter of law. *O'Brien v. Seattle,* 52 Wn. (2d) 543, 327 P. (2d) 433 (1958). *The court exercises no discretion in its determination of this issue of law.* In deciding what constitutes such a clear case at the close of the evidence, the court is not justified in basing its determination upon an assumption that the jury might conclude from the facts that contributory negligence was established. To be such a clear case, the evidence of contributory negligence must be so conclusive that the court would have committed error to have submitted the issue to the jury. *Guerin v. Thompson,* 53 Wn. (2d) 515, 335 P. (2d) 36 (1959). (Italics ours.)

This same reasoning applies when the defense involved is volenti non fit injuria. Whether plaintiff had the requisite knowledge and appreciation of the danger, whether he voluntarily consented to his exposure to such danger, and most important to our case, whether he had a reasonable alternative, are questions normally left for the jury to determine.

In the instant case, the trial court's determination that, as a matter of law, plaintiff had no reasonable alternative did not involve an exercise of discretion. Thus, in determining

814

whether the trial court properly granted a new trial, we must simply determine whether the trial court's reason is supported by the applicable legal principles and decisions. We have concluded that there was sufficient evidence to submit the question of "volenti" to the jury (*i.e.*, that reasonable minds could differ as to whether plaintiff had a reasonable alternative). Thus, we must reverse the trial court's order granting a new trial, not because he abused his discretion, but because his conclusion of law, on which that order was based, was in error.

Judgment reversed with instructions to enter judgment on the verdict.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.

July 30, 1968. Petition for rehearing denied.