[No. 14323-9-I. Division One. August 11, 1986.]

JACK G. SWEEK, *Appellant,* v. THE MUNICIPALITY OF METROPOLITAN SEATTLE, *Respondent.*

*Steven Pruzan* and *Miracle, Pruzan & Nelson,* for appellant.

*Robert W. Freeman,* for respondent.

SWANSON, J.—Jack G. Sweek appeals the superior court judgment entered upon a jury verdict in favor of the Municipality of Metropolitan Seattle (Metro) in his personal injury action for damages stemming from a bus accident. The issue presented in this appeal is whether the trial court erred in failing to instruct the jury on a common carrier's duty of care based upon its determination as a matter of law that the plaintiff was not a passenger to whom the common carrier's highest degree of care was owed. We affirm.

On November 30, 1981, Sweek, then a 71–year–old retired colonel, was returning to his northeast Seattle home on the bus in the late afternoon. He rode the number 25 bus northbound to the intersection of Northeast 65th Street and 35th Avenue Northeast where he was to transfer to the number 71 eastbound bus. Northeast 65th Street runs east and west and 35th Avenue Northeast runs north and south. The number 25 bus stops at the northeast corner of the intersection, and the number 71 bus stops at the southeast corner.

After Sweek got off the number 25 bus, he saw that the number 71 bus was stopping at the bus zone across Northeast 65th Street. He crossed the street and went around the rear of the bus. The bus door closed before he reached it and the bus began to move forward as he reached out to hit the side of the bus. He lost his balance, fell into the gutter and was injured when the bus came to rest on his left foot. After a trial in his action for damages against Metro, the jury returned a verdict in Metro's favor. Upon the trial court's denial of his new trial motion, Sweek appeals.

Generally an appellate court will not reverse the granting or denial of a new trial motion absent an abuse of the trial court's discretion. *State v. Crowell*, 92 Wn.2d 143, 145, 594 P.2d 905 (1979). However, this principle is subject to the limitation, applicable here, that when such an order is predicated upon rulings of law, such as those involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved. In such a

case, the appellate court must determine whether the trial court's reasons are supported by the applicable legal principles and decisions. *Detrick v. Garretson Packing Co.,* 73 Wn.2d 804, 812-13, 440 P.2d 834 (1968).

Here the denial of a new trial was based upon a ruling of law, whether the trial court's reason is characterized as the correctness of its instructions or its determination as a matter of law that Sweek was not a passenger at the time of the accident so that no jury instruction on a common carrier's degree of care was required. *Detrick v. Garretson Packing Co., supra.* Sweek argues that his passenger status was a question of fact for the jury so that the trial court erred in deciding that issue as a matter of law.

Even if Sweek's passenger status was a question of fact for the jury, the trial court could have made the determination as a matter of law in a clear case where the evidence is so conclusive that reasonable men could not differ and the court would have committed error to have submitted the issue to the jury. *Detrick,* at 813; *accord, Zorotovich v. Washington Toll Bridge Auth.,* 80 Wn.2d 106, 108, 491 P.2d 1295 (1971). Since the trial court's determination of Sweek's passenger status as a matter of law involved no exercise of discretion, the question here is whether the trial court's reason is supported by the applicable legal principles and decisions. *Detrick v. Garretson Packing Co., supra* at 813-14.

A bus system, as a common carrier of passengers, owes the highest degree of care toward its passengers commensurate with the practical operation of its business. *Roberts v. Johnson,* 91 Wn.2d 182, 184, 588 P.2d 201 (1978); *Benjamin v. Seattle,* 74 Wn.2d 832, 833, 447 P.2d 172 (1968). Where a prospective passenger has not attained a passenger status, the carrier owes that person the same duty that it owes to the general public, *viz.,* the duty to exercise ordinary care in the operation of its vehicles. A bus company is not required to exercise the highest degree of care, but only ordinary care, to ascertain whether a particular person walking or standing on a public street desires to

become a passenger. *Evans v. Yakima Vly. Transp. Co.*, 39 Wn.2d 841, 846–47, 239 P.2d 336 (1952).

Our Supreme Court has set forth the following matters to be considered in determining a person's passenger status:

> (1)place (a place under the control of the carrier and provided for the use of persons who are about to enter carrier's conveyance); (2) time (a reasonable time before the time to enter the conveyance); (3) intention (a genuine intention to take passage upon carrier's conveyance); (4) control (a submission to the directions, express or implied, of the carrier); and (5) knowledge (a notice to carrier either that the person is actually prepared to take passage or that persons awaiting passage may reasonably be expected at the time and place).

*Zorotovich v. Washington Toll Bridge Auth., supra* at 108–09.

The undisputed facts here are as follows. People were disembarking when Sweek reached the number 71 bus, approaching it from the rear. Sweek's progress was slowed by people on the sidewalk in front of him and he could not see the bus driver. The bus door closed before Sweek got to the door. At the same time that Sweek reached out to hit the side of the bus to let the driver know that he wanted to get on the bus, the bus began pulling away. Sweek lost his balance, fell into the gutter and was injured when the bus came to rest on his left foot.

Under the 5–part passenger determination test, Sweek was not a passenger as a matter of law, as the trial court held. The place of injury was the public street about 18 inches from the curb, a place which is not under Metro's control. The bus zone in which Sweek was standing before he fell is part of the public sidewalk which is not under Metro's sole control but is under the City's control as well and is intended not for the sole use of persons entering or departing from a bus but for pedestrians as well. *Zorotovich v. Washington Toll Bridge Auth., supra* at 109. The time was not a reasonable time before the time to enter the bus since the closing of the bus door before Sweek reached it gave notice that the bus was taking on no more passen-

gers. *Evans v. Yakima Vly. Transp. Co., supra* at 848. The pulling away of the bus made clear that the time for boarding had passed.

Sweek had the intention to ride the number 71 bus but, as Metro points out, it was not communicated to the bus driver. Further, no evidence exists that he was under Metro's control or had submitted to its agent's directions, express or implied. Last, the bus driver had no actual or constructive knowledge that Sweek desired to board the bus since no evidence was presented that Sweek was seen or could have been seen by the driver (Sweek himself could not see the driver) and had, by some act, communicated his intention to board the bus to the driver at a time when such could have been seen or done safely. *Evans v. Yakima Vly. Transp. Co., supra.* Sweek was not a person waiting to board the bus who was reasonably expected at that time and place since, as noted above, the time for boarding that particular bus had passed with the closing of its door and its forward movement.

Sweek argues that he should be deemed to be a passenger by virtue of Metro's internal regulation that transferring passengers reasonably should be accommodated and of his status as a person transferring from one bus to another. His argument is flawed. Absent any unusual inherent danger or defect in the place of disembarkment, the carrier–passenger relation ceases when a passenger departs from the bus and steps onto the sidewalk. *See Torres v. Salty Sea Days, Inc.,* 36 Wn. App. 668, 674, 676 P.2d 512, *review denied,* 101 Wn.2d 1008 (1984). Here no such danger or defect was shown so that Sweek ceased to be Metro's passenger when he got off the number 25 bus and stepped onto the sidewalk and, as discussed above, he never became a passenger of the number 71 bus.

Further, while Sweek contends that Metro's negligence should be predicated upon the bus driver's alleged failure to make *every reasonable attempt* to accommodate transferring passengers in violation of an internal Metro regulation, he neither gives persuasive reasons for doing so nor

cites any precedent for such an imposition of liability. The undisputed evidence is so conclusive that reasonable men could not differ as to the lack of Sweek's passenger status for purposes of having a special common carrier's degree–of–care instruction submitted to the jury. *Zorotovich v. Washington Toll Bridge Auth., supra* at 108; *Detrick v. Garretson Packing Co., supra* at 813. The trial court did not err in its conclusion of law upon which its denial of the new trial motion was based. *Detrick,* at 814.

Sweek further argues that the trial court erred in admitting Det. James W. Moore's and Judith A. Fisher's allegedly improper opinions on an ultimate issue in the case. However, the objections that were made at trial are inadequate for purposes of an appeal. Mere objections were raised to the questions that were asked but without a definite statement of the grounds for the objections. An objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review. *State v. Guloy,* 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied,* 106 S. Ct. 1208 (1986); *see Marr v. Cook,* 51 Wn.2d 338, 341–42, 318 P.2d 613 (1957).

The judgment below is affirmed.

SCHOLFIELD, C.J., and PEKELIS, J., concur.