[No. 85342-8. En Banc.]
Argued November 10, 2011. Decided April 5, 2012.

RONALD TETER ET AL., *Petitioners*, v. ANDREW DECK, *Respondent.*

208

*Peter M. Vial*, *Barbara H. Schuknecht*, and *Avi J. Lipman* (of *McNaul Ebel Nawrot & Helgren PLLC*); and *Matthew N. Menzer* (of *Menzer Law Firm PLLC*), for petitioners.

*Mary H. Spillane* and *Mark S. Davidson* (of *Williams Kastner & Gibbs PLLC*); *Nancy C. Elliott* (of *Merrick Hofstedt & Lindsey PS*); and *David L. Martin* (of *Lee Smart PS*), for respondent.

¶1 WIGGINS, J. — Before excluding a witness as a sanction for discovery violations, the trial court must make findings that the violation was willful and prejudicial and was imposed only after explicitly considering less severe sanctions. In this medical negligence case, a pretrial motions judge excluded a key medical expert witness without the required findings. A different judge presided over the jury trial, subsequently granting a new trial on the ground that the exclusion order was a prejudicial error of law.[1]

¶2 We hold that the trial judge was well within his discretion in granting the new trial. CR 59 authorizes a new trial under these circumstances, the facts amply supported the ruling, and a new trial was within the range of acceptable rulings. We cannot emphasize too forcefully the importance of adequate findings to support more severe discovery sanctions such as exclusion of a witness.

## FACTS

¶3 Ron Teter was diagnosed with a tumor in his right kidney. Urologist Dr. Andrew Deck, assisted by Dr. David Lauter, performed surgery to remove Teter's kidney. During

---

[1] Misconduct of defense counsel was an alternative ground for new trial. A different counsel represented defendant on appeal.

the surgery, Teter's abdominal aorta was lacerated and vascular surgeon Dr. Richard Towbin was called in to repair the aorta. Immediately after surgery, Teter developed a condition in which increased pressure in one compartment of the body compromises the tissues in that compartment. Even after a procedure to relieve the pressure, Teter continues to suffer from pain in his left leg that interferes with his ability to stand for long periods of time and with his ability to engage in his usual activities.

¶4 Teter and his wife (the Teters) sued Drs. Deck and Lauter for negligence. The Teters eventually settled with Dr. Lauter and stipulated to his dismissal as a defendant.

## I. Discovery and Expert Witnesses

¶5 The parties encountered difficulties in preparing for trial. The trial was continued to March 17, 2008, on Dr. Lauter's motion, and again to September 22, 2008 on a joint motion of all parties. The parties agreed that they needed more time to complete discovery. As a result of a pretrial conference in September 2008, the trial was continued again to January 12, 2009. Neither the Teters nor Dr. Deck complied completely with discovery deadlines and the trial court granted motions to compel by both sides.

¶6 The Teters initially retained Dr. William Duncan as their urologist-expert. They submitted a declaration from Dr. Duncan that detailed his opinions that (1) Dr. Deck breached the standard of care at several points during the course of the laparoscopic procedure; (2) Dr. Deck's breaches caused Teter's injuries;[2] and (3) Dr. Deck failed to adequately inform Teter of the risks involved in performing a laparoscopic procedure, supporting a lack of informed consent claim against Dr. Deck.

¶7 Dr. Deck deposed Dr. Duncan in January 2008. In late January 2008, the Teters notified Dr. Deck that Dr. Duncan

---

[2] Dr. Duncan's declaration included similar opinions regarding Dr. Lauter. However, Dr. Lauter was dismissed from the lawsuit after settling with the Teters.

might not be available for the March 2008 trial date, due to his impending back surgery. However, the February 2008 stipulated continuance obviated the need to replace Dr. Duncan. In August, the Teters learned that Dr. Duncan had fallen and ruptured his spleen, making him unavailable for the scheduled September trial date. Due to the imminence of the trial, the Teters requested the court's permission to replace Dr. Duncan. The Teters timely disclosed their replacement urologist-expert, Dr. Robert Golden, on November 12, 2008.

¶8 To the Teters' surprise, Dr. Golden withdrew shortly thereafter, based solely on his discovery of a professional conflict, in the form of a long standing personal and professional relationship with one of Dr. Deck's partners, precluding his testimony as the Teters' expert. Both the Teters and Dr. Golden himself immediately informed Dr. Deck's counsel of Golden's withdrawal. More than one month before the January 2009 trial date, the Teters notified Dr. Deck that they had retained Dr. Thomas Fairchild to replace Dr. Golden and that Dr. Fairchild would testify to the liability and causation issues previously identified. The Teters offered several dates for Dr. Deck to take Dr. Fairchild's deposition. Although Dr. Deck tentatively agreed to one of those dates, he later refused all of the proposed dates. Instead, Dr. Deck moved to strike Dr. Fairchild on December 29, 2008.

¶9 On the first day of trial, Judge Christopher Washington granted the motion to strike Dr. Fairchild as the Teters' expert witness.[3] Before then, the case had been reassigned from Judge Washington to Judge Steven González.[4]

---

[3] On the same day, Judge Washington disposed of two more outstanding motions in the case: (1) he denied the Teters' motion to limit expert testimony and (2) he denied Dr. Deck's motion to exclude cumulative lay witnesses. In both orders, Judge Washington indicated that the new trial court would make the decisions regarding admissibility and scope of witness testimony.

[4] The same Judge González was appointed to the Washington Supreme Court after this case was argued and decided. He took no part in the deliberations or decision in this case.

## II. The Trial and Counsel's Conduct

¶10 Judge González made it clear that he expected a high level of formality and decorum during the course of the trial. He laid out detailed instructions regarding objections, including speaking objections on the first day of trial:

> You will say, objection, rule number, you will cite the rule, or you will give the heading or title of the rule, but you won't make speaking objections during trial. If you need to supplement the record, I will certainly give you the chance later to do so. If you wish to make additional argument, you could ask for that argument, but if I don't invite it at that point, we won't hear any more argument at that time.

1 Verbatim Report of Proceedings (RP) (Jan. 12, 2009) at 59. The judge also clearly laid out his requirements that counsel must show opposing counsel anything to be shown to a witness or published to the jury, that exhibits must be marked before they could be used to refresh a witness's memory or used for illustrative purposes, and that counsel must ask permission before publishing anything to the jury.

¶11 During trial, defense counsel Nancy Elliott continued to make speaking objections after reminders from the trial court of its prohibition. Ms. Elliott also repeatedly attempted to put exhibits before the jury that had not been admitted and to elicit testimony regarding subjects that the court had ruled inadmissible or irrelevant. After one attempt, the trial court threatened to fine Ms. Elliott. Finally, Ms. Elliott told both the court and opposing counsel that Dr. Deck intended to call two witnesses, Ms. Bonnie Ellison and Dr. Lauter. However, Ms. Ellison had been told that she would not be needed, and Dr. Lauter's counsel disclaimed any attempt by Ms. Elliott to schedule Dr. Lauter's testimony.

¶12 Eventually, Judge González made a record of his concerns (outside the jury's presence) regarding Ms. Elliott's conduct:

Finally, I'd like to make a record about a few things, including my displeasure with some of the conduct in this case.

... There was late disclosure of discovery, including the CD [(compact disc)], which I thought was the original CD, but turned out to be an edited version, which was presented after 9:00 p.m. last night to opposing counsel, and I just heard about it on the record in trial.

I'm also very concerned about the issues regarding disclosure of witnesses and the timing of notifying opposing counsel and the court, and the accuracy of the representations to the court about the availability of witnesses and which witnesses would be called.

... I'm concerned about the representation from Dr. Lauter's counsel that counsel was unaware that Dr. Lauter was being requested to testify. That is different from the representation made to the court by defense counsel that efforts were being made to procure him.

I'm also concerned about attempts to circumvent the court's ruling on admissibility of documents. It certainly appears that way by putting issues before the jury regarding documents in a purported attempt to lay foundation.

For disregard for protocol and rules of evidence which are repeated—and this is not the first court in which they have occurred—for continued speaking objections after clear direction from me not to do so, and what can only be described as feigned ignorance when I say that a document must be marked before it's shown to a witness, it certainly doesn't mean it has to be admitted before a witness can refer to it to refresh recollection. It is fairly fundamental and basic how you refresh and when you can refresh a witness's recollection.

10 RP (Jan. 28, 2009) at 1903-04. After the trial court put these concerns on the record, Ms. Elliott made further attempts to elicit testimony on subjects previously ruled inadmissible.

### III. New Trial

¶13 After the jury returned a defense verdict, Judge González granted the Teters' motion for a new trial on two grounds: (1) that Judge Washington's order striking Dr.

Fairchild was an error of law under CR 59(a)(8) and (2) that defense counsel's misconduct prevented a fair trial under CR 59(a)(1) and (2).[5] Judge González also concluded that the "cumulative effect of defense counsel's misconduct throughout the trial proceedings warrants a new trial, as it casts doubt on whether a fair trial had occurred." Clerk's Papers (CP) at 713. The Court of Appeals reversed the trial court. *Teter v. Deck*, noted at 158 Wn. App. 1015, 2010 WL 4216151, at *1, 2010 Wash. App. LEXIS 2388, at *1-2.

## ANALYSIS

¶14 We review a trial court's grant of a new trial for abuse of discretion, unless that grant is based on an error of law. *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 812, 440 P.2d 834 (1968). We require a much stronger showing of abuse of discretion to set aside an order granting a new trial than one denying a new trial. *Id.*

### I. Judge González Did Not Abuse His Discretion when He Granted a New Trial Based on an Error of Law

¶15 A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Here, Judge González's decision to grant the Teters a new trial would be manifestly unreasonable if it was "outside the range of acceptable choices, given the facts and the applicable legal standard." *Id.* at 47. CR 59 allows a trial judge to grant a new trial based on an error of law.[6] CR 59(a)(8). Accordingly, Judge

---

[5] Judge González rejected several additional grounds the Teters proposed in their motion for a new trial.

[6] CR 59 also allows a trial judge to grant a party a new trial based on "any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial." CR 59(a)(1). It is arguable that we would need to review for manifest abuse of discretion only Judge González's grant of a new trial on the basis that the exclusion order was an abuse of discretion that prevented the Teters from having a fair trial. *See Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986) (appellate court may affirm trial court on any correct ground). However, the Teters' request

González's decision to grant the new trial on that basis was within the range of acceptable choices.[7] However, because Judge González concluded that the exclusion of Dr. Fairchild was an error of law, we review that conclusion de novo. *See Detrick*, 73 Wn.2d at 812. If that conclusion was correct, we would overturn the decision to grant a new trial only if we find that it was based on untenable grounds or untenable reasons. *See Littlefield*, 133 Wn.2d at 47.

### A. The exclusion of Dr. Fairchild was an error of law

¶16 Discovery sanctions are generally within the sound discretion of the trial court. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). However, the court may impose only the least severe sanction that will be adequate to serve its purpose in issuing a sanction. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 355-56, 858 P.2d 1054 (1993). A trial court may impose only the most severe discovery sanctions upon a showing that (1) the discovery violation was willful or deliberate, (2) the violation substantially prejudiced the opponent's ability to prepare for trial, and (3)

---

for a new trial based on the exclusion order was couched in terms of CR 59(a)(8) (error of law) as was Judge González's decision on the motion. CP at 223, 710.

[7] Dr. Deck argues that "[i]t was not within Judge González's purview after the verdict and entry of judgment to act as an appellate court and reverse Judge Washington's order as an abuse of discretion or reversible error." Appellant's Br. at 38-39. Dr. Deck misinterprets Judge González's action. Judge González was authorized by CR 59 to grant the Teters' request for a new trial based on an error of law. CR 59(a)(8). The order for new trial was not an appellate decision. While Judge González was required to evaluate Judge Washington's exclusion order, he did not "reverse" the order: he concluded that it was an error of law. CP at 710. Moreover, we have answered this argument before:

> [T]he succession of judges cannot be considered by this court ; the office is a continuing one ; the personality of the judge is of no legal importance. The action of Judge Griffin was in legal effect a correction of his own action, which he deemed to have been erroneous ; and it were far better that he should correct it, than to perpetuate an error which would have to be corrected by this court.

*Shephard v. Gove*, 26 Wash. 452, 454, 67 P. 256 (1901) (holding that it was not error for successor trial judge to direct a judgment for defendant based on the statute of limitations where initial judge had denied a motion for summary judgment on the same issue).

the court explicitly considered less severe sanctions. *Burnet*, 131 Wn.2d at 494, 496-97. Discovery sanctions that trigger consideration of the *Burnet* factors include exclusion of witness testimony. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 690, 132 P.3d 115 (2006) (holding that while imposition of the most serious sanctions, such as witness exclusion, triggers a *Burnet* analysis, imposition of lesser sanctions, like monetary compensation, does not).

¶17 Findings regarding the *Burnet* factors must be made on the record. *Id.* A trial court may make the *Burnet* findings on the record orally or in writing. *See Blair v. TA-Seattle E. No. 176*, 171 Wn.2d 342, 348-49, 254 P.3d 797 (2011) (noting that the trial court did not make *Burnet* findings on the record where it did not engage in a colloquy with counsel or hear oral argument and did not include the findings in the written order). Thus, where an order excluding a witness is entered without oral argument or a colloquy on the record, findings on the *Burnet* factors must be made in the order itself or in some contemporaneous recorded finding. *Id.* at 349 (rejecting the argument that "the record below speaks for itself" and thus obviates the need for the trial court to explain its reasons on the record).

¶18 In *Blair*, we addressed a situation very similar to this case. Blair had not met certain discovery deadlines, and TA-Seattle moved twice to strike witnesses as untimely disclosed. *Id.* at 345-46. The trial court granted both motions. *Id.* at 346, 347. The trial court's first order struck half of Blair's witnesses; the second order struck two late-disclosed additions to her list. *Id.* The trial court did not enter findings supporting either order, nor did it engage in colloquy with counsel or hear oral argument. The Court of Appeals affirmed the trial court's exclusion orders. *Id.* at 347. In doing so, the Court of Appeals agreed with TA-Seattle that the juxtaposition of the two orders indicated that the trial court had considered lesser sanctions. *Id.* at 350. We reversed, rejecting the premise "that an appellate court can consider the facts in the first instance as a

substitute for the trial court findings that our precedent requires." *Id.* at 351.

¶19 The similarities between *Blair* and this case are striking. The discovery process was quite contentious, and the Teters admit that they missed several discovery deadlines. Teters' Suppl. Br. at 3. And Judge Washington's order excluding Dr. Fairchild did not contain the findings required by *Burnet*. CP at 351-54. Although Judge Washington found that the Teters failed to comply with discovery orders and that Dr. Deck was prejudiced in his trial preparation, Judge Washington made no record other than the order: he held no colloquy with counsel and heard no oral argument on the motion. Therefore, the requisite findings must be set forth in the order itself. *See Blair*, 171 Wn.2d at 349. Because the order contains no finding (1) that the Teters' discovery violations were willful or (2) that Judge Washington explicitly considered less severe sanctions, Judge González was correct when he concluded that the order does not comply with *Burnet*.[8] *See* CP at 709-10.

¶20 Dr. Deck argues, and the Court of Appeals agreed, that the record plainly reflects that Judge Washington considered each of the *Burnet* factors. We reject Dr. Deck's and the Court of Appeals' attempts to read willfulness and lesser sanction findings into the order from a review of the record as a whole.

### 1. Willfulness

¶21 The Court of Appeals noted that a party's violation of a court's order is deemed willful if it was without reasonable excuse or justification. *Teter*, 2010 WL 4216151, at *5, 2010 Wash. App. LEXIS 2388, at *14 (citing *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009)). But in *Magaña*, the trial court made findings that Hyundai's discovery violations were willful; on appeal, we

---

[8] It is also unclear whether the exclusion order's finding of prejudice satisfied the *Burnet* requirements in that it finds only that Dr. Deck was "prejudiced" rather than substantially prejudiced. *See* CP at 354.

agreed with the Court of Appeals that the trial court's willfulness findings were reasonable because the record supported them. 167 Wn.2d at 585. *Magaña* is therefore inapposite.

¶22 Here, the Teters explained that Dr. Golden's sudden withdrawal was beyond their control because Dr. Golden himself was not aware of the basis for his conflict of interest when he agreed to be their expert witness. In *Magaña*, the trial court explicitly discredited Hyundai's excuse based on facts in the record. *Id.* at 585-86. Here, only Dr. Deck asserts that the Teters had "no reasonable excuse" for the late disclosure. CP at 365. This bare assertion cannot substitute for the trial court's rejection of the Teters' explanation. Judge Washington made no reference to the Teters' explanation and did not explicitly reject it. Therefore, the Court of Appeals' cursory reliance on *Magaña* conflicts with our holding in *Blair*. *Teter*, 2010 WL 4216151, at *5, 2010 Wash. App. LEXIS 2388, at *14-15; *Blair*, 171 Wn.2d at 351.

## 2. Lesser sanctions

¶23 The Court of Appeals also agreed with Dr. Deck's argument that Judge Washington's consideration of lesser sanctions is "apparent from the record" because Judge Washington had already imposed lesser sanctions. Resp't's Answer to Pet. for Review at 12; *see Teter*, 2010 WL 4216151 at *5, 2010 Wash. App. LEXIS 2388, at *14. Again, we rejected this argument in *Blair* when we held that a prior order excluding only some of Blair's witnesses could not substitute for consideration of lesser sanctions on the record for the subsequent exclusion order. 171 Wn.2d at 350-51. We continue to reject this argument here. Mere issuance of lesser sanctions during the discovery process cannot substitute for on-the-record consideration of lesser sanctions when excluding a witness.[9]

---

[9] Dr. Deck argues that Judge Washington considered lesser sanctions when he orally ordered the Teters at the November 12, 2008 pretrial conference to disclose their expert by the end that day or they would not be allowed to call a urologist

## B. A new trial is the appropriate remedy

▇ ¶24 Since Judge González did not err in concluding that the exclusion of Dr. Fairchild was an error of law, his decision to grant a new trial on that basis would be an abuse of discretion only if it were based on untenable grounds or reasons. *See Littlefield*, 133 Wn.2d at 46-47. A court's decision is based on untenable grounds if the factual findings are not supported by the record; the decision is based on untenable reasons if it is based on an incorrect standard. *Id.* at 47. CR 59 allows a trial court to order a new trial based on an error of law where that error "materially affect[s] the substantial rights" of a party. CR 59(a)(8). Here, Judge González found that the exclusion of Dr. Fairchild "substantially and severely prejudiced" the Teters' right to a fair trial. CP at 710. Substantial and severe prejudice qualifies as a material effect; accordingly, Judge González's decision was based on the correct standard.

¶25 Further, Judge González's findings of prejudice are supported by the record. First, the record shows that the Teters were forced to abandon their claim of lack of informed consent against Dr. Deck because Dr. Fairchild was their only expert who could give evidence on that claim. 1 RP at 30. Second, the record shows that Dr. Fairchild was the Teters' only medical expert who was a urologist. His exclusion opened the door to the defense argument that the Teters could not prove their case against Dr. Deck, a urologist, because they did not produce a urologist expert, a door that defense counsel stepped through repeatedly in closing. 12 RP (Jan. 30, 2009) at 2222-24, 2236, 2240. Thus, Judge González's decision to grant the Teters a new trial was not an abuse of discretion.

¶26 Dr. Deck argues that even if Judge Washington's order contained technical errors, the correct remedy is a remand to Judge Washington to make the *Burnet* find-

---

expert. There is no transcript of that pretrial conference in the record and no record that Judge Washington considered lesser sanctions at that time.

ings.[10] We rejected a similar argument in *Blair*. 171 Wn.2d at 352 n.6 (allowing the trial court to make after-the-fact findings to support its exclusion orders "would be inappropriate"). Admittedly, we have remanded cases to the trial court for *Burnet* findings. *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 700, 41 P.3d 1175 (2002). However, the action under review in *Rivers* was a dismissal with prejudice rather than the grant of a new trial after a judgment on the merits; we remanded for a new determination of whether the complaint should be dismissed, with specific *Burnet* findings on the record. *See id.* at 683, 700. Where a case has been decided on the merits, either by jury trial or on summary judgment, we have remanded for a new trial. *Blair*, 171 Wn.2d at 352; *Burnet*, 131 Wn.2d at 498-99.

¶27 This case is more like *Burnet*—in both *Burnet* and here, the sanction order forced plaintiffs to abandon one of their claims. In *Burnet*, plaintiffs were precluded from bringing negligent credentialing claims by an order limiting discovery on the issue, 131 Wn.2d at 490-91, while here the Teters were forced to abandon an informed consent claim due to exclusion of Dr. Fairchild. Moreover, the *Burnet* majority rejected the argument that the Burnets had waived the issue on appeal by failing to move for reconsideration. Here, the Teters placed the issue before Judge González by making their offers of proof, and Judge González made it clear that he had accepted the case only because it was "ready to go." 1 RP at 9. Nonetheless, he allowed the Teters to make their proffers on the record. ER 103 provides that an offer of proof is sufficient to preserve an issue for appeal. ER 103(a)(2). In addition, the Teters could not ask Judge Washington to reconsider since he had

---

[10] Dr. Deck notes, in particular, that the Teters failed to move for reconsideration of the exclusion order. Although the Teters initially planned to move for reconsideration, they ultimately chose to make two offers of proof on the record. Judge González indicated that he understood the purpose of the proffer and did not require a motion to reconsider. Judge González also allowed defense counsel to respond to the second proffer.

already been replaced as the trial judge when he signed the exclusion order. We decline Dr. Deck's invitation to "allow the trial court to make after-the-fact findings" to support the exclusion order. *Blair*, 171 Wn.2d at 352 n.6. An order for new trial was the appropriate remedy.

II. Judge González Did Not Abuse His Discretion by Granting a New Trial Based on Defense Counsel's Misconduct

¶28 We review a trial court's order granting a new trial solely for abuse of discretion when it is not based on an error of law. *Detrick*, 73 Wn.2d at 812. And we require a much stronger showing of abuse of discretion to set aside an order granting a new trial than one denying a new trial. *Id.* A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Littlefield*, 133 Wn.2d at 46-47. A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices. *Id.* Under CR 59(a)(2), a trial court may grant a new trial where misconduct of the prevailing party materially affects the substantial rights of the losing party. *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 539, 998 P.2d 856 (2000) (*Alcoa*). Accordingly, Judge González's decision to grant a new trial on this basis was also within the range of acceptable choices and we will overturn that decision only if we find that it was not supported in the record or was made under an incorrect standard. *See Littlefield*, 133 Wn.2d at 47.

¶29 The Court of Appeals, however, appears to have reviewed Judge González's ruling as an issue of law. Without identifying the standard of review, the Court of Appeals held that Judge González's findings were too general and nonspecific to support his conclusion that defense counsel's misconduct deprived the Teters of a fair trial. *Teter*, 2010 WL 4216151, at *5, 2010 Wash. App. LEXIS 2388, at *17. The Court of Appeals went on to hold that the instances of misconduct identified by the Teters in their briefing did not

"appear[ ] so out of the ordinary or so irregular or flagrant as to deprive the Teters of a fair trial." *Teter*, 2010 WL 4216151, at *5, 2010 Wash. App. LEXIS 2388, at *17. In reaching this conclusion, the Court of Appeals appears to have substituted its own judgment for that of the trial court. *See State v. Lord*, 117 Wn.2d 829, 887, 822 P.2d 177 (1991) ("The trial court is in the best position to most effectively determine if [counsel's] misconduct prejudiced a [party's] right to a fair trial."), *cert. denied*, 506 U.S. 856 (1992).

¶30 The Rules of Evidence impose a duty on counsel to keep inadmissible evidence from the jury. ER 103(c). Persistently asking knowingly objectionable questions is misconduct. 14A KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PRACTICE § 30:33 (2d ed. 2009). Even where objections are sustained, the misconduct is prejudicial because it places opposing counsel in the position of having to make constant objections. *Id.* These repeated objections, even if sustained, leave the jury with the impression that the objecting party is hiding something important. Misconduct that continues after warnings can give rise to a conclusive implication of prejudice. *Id.* § 30:41.

¶31 Applying the deferential review appropriate to misconduct findings in civil cases, *see Alcoa*, 140 Wn.2d at 539, we conclude that the record supports Judge González's findings of misconduct.

¶32 First, the trial record reveals that defense counsel repeatedly violated the evidence rules by attempting to put exhibits before the jury that had not been admitted and to elicit testimony regarding subjects that the court had ruled inadmissible or irrelevant. For example, defense counsel moved repeatedly for admission of Teter's entire hospital record as defense exhibit 1002.[11] The Teters objected because the exhibit included documents not relevant to their claims, hearsay, and documents that violated the court's rulings on plaintiff's motions in limine. *See* 10 RP at 1787.

---

[11] Several individual pages of exhibit 1002 were admitted for illustrative purposes; other documents in the exhibit had been admitted individually as plaintiff's exhibits.

Nonetheless, defense counsel continued to move admission of the exhibit in its entirety because Dr. Deck's experts had relied on it in forming their opinions. Judge González eventually admonished defense counsel, "As counsel well knows, and as I mentioned already in this trial, an expert may rely upon documents. That does not make them admissible as substantive evidence themselves." 10 RP at 1788.

¶33 Additional misconduct included violation of the following rulings: order granting plaintiff's motion in limine regarding evidence that Teter failed to mitigate his damages, order limiting the evidence regarding Dr. Lauter's role in the surgery, and Judge González's prohibition on speaking objections.[12] Examples of improper speaking objections include:

> Ms. Elliott: Your honor, object to this based upon the depositions and the subpoenas and the outstanding discovery request.
>
> The Court: The jury will disregard the speaking objection. The objection is overruled.

3 RP (Jan. 14, 2009) at 310 (from the first day of testimony).

> Mr. Lipman [plaintiff's counsel]: Objection, relevance.
>
> Ms. Elliott: They have a claim for –
>
> The Court: You know what? If I'm not asking for argument, I don't want to hear it from either counsel. The objection is overruled.

*Id.* at 325.

> Mr. Menzer: Same objection.
>
> The Court: Sustained.
>
> Ms. Elliott: Your honor, experience is in question here. I believe that it's relevant.
>
> The Court: I believe that I've spoken already about my opinion of speaking objections, and I won't tolerate more.

6 RP (Jan. 21, 2009) at 961.

---

[12] Speaking objections can be another method of exposing the jury to inadmissible evidence and inappropriate argument.

Ms. Elliott: Your honor, object to this, since their expert said that this complication was not negligence.

The Court: No speaking objections.

9 RP (Jan. 27, 2009) at 1572-73.

■ ¶34 These examples show that Judge González was sufficiently troubled to make a record of his concerns about defense counsel's conduct. Finally, the repeated instances of misconduct after warnings by the court support Judge González's finding that the cumulative effect of the misconduct warranted a new trial.[13] *See* CP at 713. Therefore, Judge González's findings of misconduct and prejudice are supported by the record. Moreover, he made these findings under the appropriate standard because misconduct that "unfairly and improperly exposed the jury to inadmissible evidence [and] prejudiced [the Teters]" qualifies as a material effect on the Teters' substantial right to a fair trial. CP at 712-13; CR 59(a). Accordingly, Judge González did not abuse his discretion in granting a new trial.

■ ■ ¶35 The Court of Appeals held that the Teters had waived their claim to a new trial based on defense counsel's misconduct because they did not move for a mistrial. *Teter*, 2010 WL 4216151, at *6, 2010 Wash. App. LEXIS 2388, at *18. The Court of Appeals cited *Nelson v. Martinson*, 52 Wn.2d 684, 689, 328 P.2d 703 (1958), for the premise that a party may not "wait and gamble on a favorable verdict" before claiming error. While the basic premise is correct, the Court of Appeals ignores the exception for misconduct so flagrant that no instruction can cure it. *Warren v. Hart*, 71 Wn.2d 512, 518, 429 P.2d 873 (1967) (addressing a party's reliance on *Nelson*, 52 Wn.2d 684). Equally important, *Nelson* is also inapposite because there the respondents made no objection when the misconduct

---

[13] The prejudice finding is also supported by the fact that one member of the jury felt it necessary to inform Judge González's clerk that the juror felt "like strangling a couple of lawyers." 11 RP (Jan. 29, 2009) at 1917.

occurred. 52 Wn.2d at 689. Conversely, the Teters consistently objected to inappropriate lines of questioning and attempts to put exhibits that had not been admitted before the jury. In fact, the trial court sustained one of the Teters' objections when defense counsel relied on such testimony during closing argument.

¶36 Moreover, we more recently articulated a different standard in *Alcoa*: a court properly grants a new trial where (1) the conduct complained of is misconduct, (2) the misconduct is prejudicial, (3) the moving party objected to the misconduct at trial, and (4) the misconduct was not cured by the court's instructions. 140 Wn.2d at 539. Here, the first two criteria are met by Judge González's findings of misconduct and prejudice. In addition, the Teters objected regularly and requested curative instructions. This meets the standard set forth in *Alcoa*. It would be onerous to require a party to also move for mistrial to preserve a claim for error based on misconduct. We reverse the Court of Appeals holding to that effect.

## CONCLUSION

¶37 We have quite clearly held that explicit findings regarding the *Burnet* factors must be made on the record when a court imposes the most severe discovery sanctions, like excluding a witness. In this case, neither the record nor the order excluding Dr. Fairchild contains explicit findings on the *Burnet* factors. We also hold that the trial court did not abuse its discretion in granting a new trial based on defense counsel's misconduct because the trial court's findings of misconduct are adequately supported by the record, and we will not substitute our own judgment for the trial court's judgment in evaluating the scope and effect of that misconduct. Accordingly, we reverse the Court of Appeals,

reinstate the order for a new trial, and remand for proceedings consistent with this opinion.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ.; and ALEXANDER, J. PRO TEM., concur.