IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| KRISTY L. RICKEY and KELLEY R. CAVAR, individually and as Co-Personal Representatives of the Estate of Gerald Lee Munce, Deceased, | No. 45873-0-II |
| Appellants, | |
| v. | |
| DENNIS CLINE and "JANE DOE CLINE, individually, and the marital community comprised thereof, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Kristy Rickey and Kelley Cavar, individually and as personal

representatives of the estate of the late Gerald Munce (collectively, the estate), appeal from an

adverse jury verdict in a negligence case. The estate sued Dennis Cline for negligent entrustment

and negligent performance of a gratuitous undertaking because he returned several guns to their

owner, Clarence Munce. Clarence[1] later fatally shot his son, Gerald. The estate argues that the

trial court erred by (1) refusing to instruct the jury on negligent performance of a gratuitous

undertaking, (2) wrongly instructing the jury on the elements of negligent entrustment, (3)

excluding certain evidence regarding guns, and (4) admitting evidence of the late Gerald's

alcohol use. The estate additionally argues that (5) Cline's counsel committed misconduct on

several occasions, warranting a new trial. Finally, the estate argues that (6) cumulative error

---

[1] Because Clarence Munce and Gerald Munce share a last name, we use their first names for
clarity. No disrespect is intended.

requires a new trial, and the trial court erred by denying the estate's motion for a new trial. We disagree and affirm the verdict.

FACTS

A.    *Substantive Facts*

Clarence Munce was an elderly man who suffered from the early stages of dementia, with mild symptoms. Clarence had a son, Gerald, and a nephew, Dennis Cline.

In June 2007, Cline was passing by Clarence's home and noticed a police car stopped there. Cline went inside and found Clarence reporting to police officers that someone had stolen his guns. Previously, Gerald had told Cline he planned to take Clarence's guns. Suspecting that Gerald had taken the guns, and knowing that Clarence wanted to sell the guns, Cline agreed with Clarence and the police officer that he would go find the guns and help Clarence sell them. Cline did this to help keep the peace between Gerald and Clarence.

Cline recovered the guns from Gerald, then kept them at his own house. Cline attempted to arrange with Clarence to sell the guns, but Clarence was intractable: he insisted that Cline return his guns to him. Frustrated, Cline returned the guns to Clarence about two to three weeks later. Shortly before Cline returned the guns to Clarence, he informed Gerald that he had done so.

Nearly a year later, in June 2008, Clarence fatally shot Gerald with one of the guns Cline had returned to him. Gerald had been drinking, and argued with Clarence about a hood ornament Clarence wanted. Gerald went to Clarence's house and pounded on the front door. The two began to argue, and the argument turned violent: Clarence hit Gerald with a golf putter, and Gerald threw the hood ornament at Clarence. Gerald ran away, and Clarence shot him in the

back. Gerald died of his wounds. At the time of his death, Gerald's blood alcohol content was roughly 0.10 g/ml., which suggested that he had consumed about 9 or 10 alcoholic drinks.

The estate[2] sued Cline for negligent entrustment and negligent performance of a gratuitous undertaking. It alleged that *Gerald* took Clarence's firearms for safekeeping because Clarence was incompetent due to "dementia and/or Alzheimer's disease" and because he had "extremely violent tendencies." Clerk's Papers (CP) at 2. The complaint alleged that Cline "believed that Gerald had taken the guns for safekeeping because there were concerns that Clarence suffered from dementia/Alzheimer's and or [sic] other mental infirmities, and thus was unsafe to own or possess firearms." CP at 3. The complaint further alleged that Cline offered to take the guns from Gerald and ensure that they would not be returned to Clarence, and that Gerald "reasonably relied upon Defendant Dennis Cline's affirmative representation that he would dispose of the aforementioned deadly weapons in a safe and prudent manner, and not return the weapons to Clarence." CP at 4. Thus, the estate alleged that Cline negligently entrusted the guns to Clarence, who was incompetent, and negligently performed the gratuitous undertaking of protecting Gerald from Clarence's weapons.

B.     *Alcohol Defense*

Cline pleaded several affirmative defenses, including the defense under RCW 5.40.060 that more than 50 percent of the proximate cause of Gerald's death was his own voluntary intoxication, and that he was therefore barred from recovery. The estate moved for partial summary judgment to dismiss this alcohol defense. It argued that Cline had presented no

---

[2] Plaintiffs Kristy Rickey and Kelly Cavar are both Gerald's daughters and are coexecutors of his estate.

evidence that Gerald's intoxication was a proximate cause of his death. The trial court denied this motion.

Shortly before the trial, the estate moved in limine to exclude evidence of Gerald's intoxication arguing that there was no proof that Gerald's intoxication proximately caused his death and that the evidence was unfairly prejudicial. The trial court denied the motion in limine. However, before instructing the jury, the trial court granted the estate's motion for a directed verdict to dismiss the alcohol defense, citing Cline's failure to prove that Gerald's intoxication proximately caused his death.

C.      *Clarence's Violent Tendencies*

Cline moved in limine to exclude, on the basis of relevance, several allegations about Clarence not known to Cline. The trial court granted Cline's motion in limine to exclude evidence of when Clarence threatened a family friend named Bill Federson with a firearm in the early 1990s (the Federson incident). The trial court denied Cline's motion to exclude evidence of when Clarence pulled a gun on his sister-in-law Marjorie Baughn also in the early 1990s (the Baughn incident). During its offer of proof, the estate stated that Baughn would not testify.

The trial court heard offers of proof from the estate about the foundation for evidence of Clarence's violent tendencies. The estate admitted that Sunny Rhone, Clarence's stepdaughter, never told Cline about the Federson incident. The estate argued that it was a "significant family event" that Cline had probably heard about, but it did not provide an offer of proof that Cline in fact knew about this incident before he returned the guns to Clarence. 1 Verbatim Report of Proceedings (VRP) (Sept. 9, 2013) at 119-20. The trial court ruled that the Federson and Baughn incidents were hearsay supported only with "the testimony of [Sunny Rhone] who heard it from someone who heard it from someone." 1 VRP (Sept. 9, 2013) at 124. Based on this, and the fact

4

that it was "too remote in time," the trial court excluded the Federson incident. 1 VRP (Sept. 9, 2013) at 124-25. But based on the estate's offer of proof that Rhone had told Cline about the Baughn incident, the trial court ruled that Rhone would be allowed to testify about it.

During trial, Sunny Rhone testified that she told Cline some of her concerns about Clarence's violent tendencies in September 2003. She specifically told him she was concerned about Clarence having access to guns because "he goes totally out of control in these rages where he goes after people." 3 VRP (Sept. 11, 2013) at 29. Rhone also testified that she talked to Cline around the time Cline took the guns from Gerald in 2007. She testified that she "told him that as far as [she] was concerned, why the hell did [Cline] take the guns home with [him], why didn't [he] let the police take the guns and melt them down or chop them up, or do whatever they do, to put this family out of risk so [Clarence] couldn't hurt anyone." 4 VRP (Sept. 12, 2013) at 23. She testified that she told Cline, both in 2007 and in 2003, about specific instances of Clarence's violence. But Rhone apparently did not testify about the Baughn incident, despite the trial court's ruling that she could.

The estate tried again to admit evidence of the Federson incident and to present Baughn's own testimony about the Baughn incident. The estate argued that Cline had opened the door to this evidence by eliciting testimony from other witnesses that Clarence "had never confronted anybody with a gun." 8 VRP (Sept. 26, 2013) at 15. The trial court excluded this evidence because there was no evidence that Clarence was incapacitated due to dementia or Alzheimer's when they happened (as he was alleged to be when Cline returned the guns to him); thus, the evidence was irrelevant. And despite its prior ruling that Rhone could testify about the Baughn incident, the trial court ruled that both incidents were too remote in time to be relevant. Finally, the trial court ruled that any evidence other than Baughn's own testimony about her experience,

was inadmissible hearsay because the estate sought to present testimony from Rhone that she had heard about (not witnessed) these incidents. Thus, the trial court allowed most offered evidence showing Cline's knowledge about Clarence's tendencies, but it did not allow evidence regarding Clarence's prior acts of which Cline was unaware.

After Cline made a passing reference to the Federson incident during his testimony, the estate argued that Cline had opened the door to further testimony establishing the Federson incident. But again, the estate offered only hearsay evidence of this incident. It offered only Sunny Rhone's testimony about the Federson incident which she had not observed. *See* 4 VRP (Sept. 12, 2013) at 59 ("I saw [Clarence] waving guns around and saying he was going to shoot somebody sometime . . . but I didn't see him go to that person and do it.") The trial court once again excluded this evidence, ruling:

> [G]iven the fact that [the Federson incident] is so late and old in time and that [Cline's] source of knowledge comes from someone else, I find it doesn't meet the reliability and trustworthy requirement. I don't think it falls within the exception to the hearsay rule. My notes reflect that while [Cline] certainly made reference to it, he didn't explain it, and it didn't come in context. I don't see its admission as constituting a matter of impeachment or rebuttal.

8 VRP (Sept. 26, 2013) at 188.

D.      *Other Family Members' "Guilt"*

During cross-examination of Rhone, Cline's counsel questioned her about whether she and others in the family knew that Clarence had the guns for nearly a year before the shooting; she answered affirmatively. The estate did not object. Then, Cline asked her why she or others in the family did not "do something about it in that one year after he got these guns back." 4 VRP (Sept. 12, 2013) at 77. The estate objected, and the trial court overruled the objection. 4 VRP (Sept. 12, 2013) at 77. Cline asked whether the family's awareness of Clarence's condition was "at least as good as Dennis Cline's," and the estate objected again. 4 VRP at 79. The trial

6

court overruled the objection. On recross-examination, Cline asked Rhone whether she felt "a little guilty about not doing something in that year." 4 VRP at 101. The estate objected, and the trial court sustained the objection. 4 VRP at 101. Cline rephrased the question: "I don't mean guilty in the criminal sense, but guilty inside, you feel guilt and regret, am I correct?" 4 VRP at 101. Rhone agreed. The estate did not object.

The estate later moved in limine to preclude Cline from eliciting testimony about whether anyone to whom fault had not been allocated was responsible for Gerald's death, and it sought a limiting instruction. The trial court ruled that ER 607[3] governed this issue as follows:

> [W]hen a proponent of evidence puts a witness on the stand, they are subject to cross examination . . . as to conduct and/or statements . . . that are inconsistent with the text of what they are saying in their testimony. I don't find that there is anything that [Cline] asked that would mislead a jury.

5 VRP at 11. The trial court concluded that the questioning went to damages, not fault allocation, and was appropriate under ER 607. The trial court later provided jury instruction 18, which read in relevant part that entities to whom the jury could allocate fault "may only include Dennis Cline and Clarence Munce." CP at 2267.

E.    *Impeachment of Boldosser*

Ron Boldosser was Clarence's tenant. The estate called him to testify about Clarence's erratic behavior. Before Boldosser testified, the estate sought to exclude references to his misdemeanor drug conviction under ER 609.[4] The trial court ruled that Cline could not impeach Boldosser based on his misdemeanor conviction because it fell outside the scope of ER 609, but

---

[3] ER 607 provides that any party may attack the credibility of a witness.

[4] ER 609 provides that a party may attack a witness's credibility based on a prior criminal conviction only if the conviction is for a felony or for a crime involving dishonesty or a false statement.

it ruled that Cline could impeach Boldosser on issues such as whether he was a good tenant or the reason Clarence evicted him.

The estate elicited testimony from Boldosser that Clarence's behavior became erratic and that he suddenly evicted Boldosser. On cross-examination, Cline asked whether Clarence's problems with Boldosser started "when [Boldosser was] arrested on the property . . . [b]ecause of [Boldosser's] criminal activities." 6 VRP (Sept. 23, 2013) at 34. Boldosser agreed. Cline asked Boldosser whether he was arrested "with five and a half ounces of cocaine," and Boldosser agreed. Then Cline asked whether Boldosser had a current warrant for his arrest, and Boldosser agreed. The estate did not object to any of these remarks. On redirect examination, Boldosser corrected his statement about cocaine: he admitted to possessing five grams, rather than five ounces, of cocaine.

Outside the jury's presence, the estate informed the court that Boldosser had moved to quash the outstanding arrest warrant. The estate requested the opportunity to reopen Boldosser's testimony to elicit that fact, and the trial court denied this request. The estate proposed a curative instruction. The trial court provided the jury a modified version of the estate's proposed instruction, which read in relevant part:

> [T]here was evidence that Mr. Boldosser had a records reflected [sic] that he had outstanding warrants. Now, I want to instruct you that at the time of that testimony of Mr. Boldosser, a hearing had already been scheduled by Mr. Boldosser to quash those warrants, which were misdemeanor warrants and in no way related to any felony.

10 VRP (Oct. 1, 2013) at 20.

E.    *Closing Argument*

During closing argument, Cline's counsel said:

Now, not one witness in this case called by any party has ever seen Clarence Munce threaten anybody with a gun, has never [sic] seen Clarence Munce violent, has

8

never [sic] seen Clarence Munce use a gun in an inappropriate way. We have been here three weeks, not one witness has testified to that. That's the evidence we have in this case. We heard a lot of rumor, innuendo about what Clarence did 20 years ago, what Clarence did here, what he told me. That's not evidence, that's rumor, innuendo.

12 VRP (Oct. 2, 2013) at 6. He continued:

Circumstantial evidence in this case, one particularly large one is when you look at the evidence on the inside of Mr. Munce's house—I won't show it to you because you've seen it already—there is a picture of his desk, there is an open box of Benadryl on that. I'll talk about that a little later and [its] significance. But that's circumstantial evidence. This is Benadryl and how does that interact with the other evidence in this case.

12 VRP (Oct. 2, 2013) at 6-7. The estate did not object. Later, Cline's counsel argued:

The other thing Dr. Von Preys talked about was the acute confusion, acute confusion by taking Benadryl possibly. When I mentioned to Dr. Robin about—I asked her about that, what about taking over the counter. She said, well, you know it can be an effect, not so much. I said what about Benadryl. And she got kind of a funny look on her face and said, yeah, that's a little bit different. Now, people take Benadryl to go to sleep. Clarence was sound asleep when this happened. There is an open box of Benadryl. We don't know for sure that he took it, but you can take this in under circumstantial evidence. The acute confusion kind of explains a lot of things. And why did he come to the door so groggy, and why did they get in an argument, why did the violence occur, this kind of explains things and she talked about it.

12 VRP (Oct. 2, 2013) at 25. The estate did not object to any of these arguments.

F.    *Verdict and Appeal*

The jury answered "no" on the special verdict form that asked if Cline was negligent. CP at 2271. The jury did not reach proximate cause or damages. Consequently, the trial court entered judgment for Cline.

The estate moved for a new trial under CR 59. It argued that the court erred by failing to instruct the jury on negligent performance of a gratuitous undertaking. It also argued that Cline's counsel committed misconduct, warranting a new trial. The trial court denied this motion. The estate appeals.

9

ANALYSIS

I. JURY INSTRUCTIONS

The estate argues that the trial court erred by refusing to give its proposed instruction on negligent performance of a gratuitous undertaking, and by incorrectly instructing the jury on negligent entrustment. We disagree.

A. *Standard of Review*

We review jury instructions de novo for errors of law, and a legally erroneous jury instruction is reversible error if it prejudices a party. *Hue v. Farmboy Spray Co., Inc.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995). But the trial court has discretion to give particular jury instructions; accordingly, we review the trial court's decision whether to give a particular jury instruction for an abuse of discretion. *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 526, 864 P.2d 996 (1994). A trial court abuses its discretion when its decision is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012). Jury instructions are proper if they adequately state the law, do not mislead the jury, and allow each party to argue its theory of the case. *Capers v. Bon Marche*, 91 Wn. App. 138, 142, 955 P.2d 822 (1998). A party is entitled to an instruction on its theory of a case only if substantial evidence supports the theory. *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 616, 707 P.2d 685 (1985); *Ramey v. Knorr*, 130 Wn. App. 672, 688, 124 P.3d 314 (2005). Substantial evidence is evidence that is "of a sufficient quantum to persuade a fair-minded person of the truth of a declared premise." *Nationscapital Mortg. Corp. v. Dep't of Fin. Insts.*, 133 Wn. App. 723, 738, 137 P.3d 78 (2006). In determining whether there is substantial evidence to support the instruction, we view the

10

evidence in the light most favorable to the party who requested it. *Mina v. Boise Cascade Corp.*, 37 Wn. App. 445, 448, 681 P.2d 880 (1984), *aff'd*, 104 Wn.2d 696, 710 P.2d 184 (1985).

B.       *Negligent Performance of a Gratuitous Undertaking*

The estate argues that by rejecting the estate's proposed jury instruction on negligent performance of a gratuitous undertaking, the trial court effectively dismissed this claim. Thus, the estate urges us to review this action de novo as a sua sponte judgment as a matter of law under CR 50. After framing this jury instruction issue as judgment as a matter of law, the estate then argues that CR 50 does not empower the trial court to dismiss a claim sua sponte. Alternatively, the estate argues that the trial court abused its discretion by refusing to give the jury instruction. Cline argues that the gratuitous undertaking theory was not supported by substantial evidence, and therefore the estate was not entitled to a jury instruction about it. We agree with Cline.

1. *Applicable Standard of Review*

As an initial matter, the estate argues that we should review the trial court's refusal to give its proposed instruction as a sua sponte judgment as a matter of law under CR 50. We disagree.

This decision was not sua sponte: Cline objected to instruction 13A on the basis of insufficient evidence. Moreover, the estate provides no authority for the proposition that the refusal to give a jury instruction amounts to judgment as a matter of law. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" *Dep't of Ecology v. Wahkiakum County*, 184 Wn. App. 372, 377 n.3, 337 P.3d 364 (2014) (quoting *DeHeer v. Seattle Post-*

*Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)), *review denied*, 182 Wn. 2d 1023 (2015)).  Instead, we review the refusal to give this jury instruction for an abuse of discretion.

2.  *No Abuse of Discretion*

The estate argues that the trial court abused its discretion by refusing to give its proposed instruction on negligent performance of a gratuitous undertaking.  We disagree because there was not substantial evidence to support this theory.

Traditionally, tort law creates no duty to aid someone, absent a contractual duty or special relationship.  *Folsom v. Burger King*, 135 Wn.2d 658, 674, 958 P.2d 301 (1998).  An exception to this general rule is the voluntary rescue doctrine, also known as negligent performance of a gratuitous undertaking, which "may arise if a defendant takes steps to assist a person in need and acts negligently in rendering that assistance."  *Folsom*, 135 Wn.2d at 675.  If the defendant is aware of a potential danger and acts to aid the plaintiff, then the defendant "may be liable for attempting a voluntary rescue and making the plaintiff's situation worse if that [defendant] (1) increases the danger, (2) misleads the plaintiff into believing the danger has been removed, or (3) deprives the plaintiff of possible help from others."  *Ganno v. Lanoga Corp.*, 119 Wn. App. 310, 316, 80 P.3d 180 (2003).

The estate argued that Cline negligently performed the gratuitous undertaking of keeping the guns away from Clarence, thereby proximately causing Gerald's death.  The estate proposed instruction 13A, which read in relevant part:

> Plaintiffs claim that defendant Dennis Cline negligently performed a gratuitous undertaking.  A defendant is liable for the negligent performance of a gratuitous undertaking when:
> (1) While otherwise having no duty to do so, the defendant gratuitously agrees or promises to render services, or engages in actions for another, which the defendant should recognize as necessary for the protection of other persons;

(2) The defendant, upon commencement or during performance of such services or acts, fails to exercise ordinary care in performance of the services or such acts; and

(3) The plaintiff(s) were injured as a proximate cause of the defendant's failure to exercise ordinary care which increased the risk of harm, or because of reliance by the plaintiff(s) that the defendant would perform the undertaking.

CP at 2187. No other jury instructions addressed this theory. The trial court rejected the proposed instruction, saying that the evidence did not support the theory.

As an initial matter, we note that the estate's brief fails to cite the record in its argument section as required by RAP 10.3(a)(6). It argues that substantial evidence supports each element of this claim, but it never cites the record on this point during its argument section. The brief appears to cite the record at a few places in its facts section to support this theory, although it does not state that these record cites constitute substantial evidence. Moreover, the brief cites to nonexistent pages of particular record volumes and the volumes cited by the brief include a conference on jury instructions and closing argument, not testimony. Accordingly, the brief fails to comply with the requirements of RAP 10.3(a)(6).

We nonetheless reach the merits of this argument. First, we hold that the proposed jury instruction contained a legal error. Apparently following the *Restatement (Second) of Torts* § 324A (1965), it provides that the defendant is liable when he "should recognize" his aid as necessary. CP at 2187. But Washington has not adopted the *Restatement*'s language. *Folsom*, 135 Wn.2d at 676; *Meneely v. S.R. Smith, Inc.*, 101 Wn. App. 845, 862 n.4, 5 P.3d 49 (2000). Instead, the standard in Washington is that the defendant must *know* his aid is necessary. *Folsom*, 135 Wn.2d at 677. Thus, the proposed instruction was improper for providing an incorrect mental state for liability.

Second, we hold that the trial court did not abuse its discretion by refusing to give this jury instruction because there was no substantial evidence supporting the element that Cline knew that his removal of the guns was necessary for Gerald's protection. The estate presented no evidence that Cline knew his removal of the guns was necessary as a safety precaution. The estate showed only that Rhone warned Cline in 2003 and 2007 that Clarence could be violent, and that *Gerald* initially took the guns from Clarence for "safekeeping." 8 VRP (Sept. 26, 2013) at 194. But these facts do not establish that *Cline* knew or had reason to know that keeping the guns away from Clarence was *necessary* to Gerald's protection. Instead, the evidence showed that Cline believed Clarence should have his own guns. *See* 7 VRP (Sept. 25, 2013) at 21 ("I might defer [to Gerald on the question of whether Clarence should have guns,] but it isn't that I would agree with him that his father shouldn't have guns."). No one testified that Clarence had threatened Gerald, let alone that Cline knew about any such incident. Thus, the estate failed to provide substantial evidence to support this element.

The estate argues that "Mr. Cline knew that Gerald had removed the guns out of safety concerns, thus it should have been left to the jury to make a determination as to whether or not he knew that he was engaging in services and/or actions which were necessary 'for the protection of other persons.'" Br. of Appellant at 39. Thus, the estate appears to concede that there was no evidence that Cline actually knew that his removal of the guns was necessary to protect Gerald from Clarence. But as stated above, we review the trial court's refusal to give a jury instruction for an abuse of discretion, considering whether substantial evidence supported the requested instruction—not whether the jury could have made an inference.

The estate argues that Cline admitted to liability under this theory when he testified in his *deposition* as follows:

14

Q: All right. So you had taken—you know, as [Gerald's] friend, you had gratuitously undertaken this—undertaken this commitment to make sure those guns were properly disposed of at that time; isn't that right?

A: Yes.

CP at 398. But the deposition was not submitted as substantive evidence at trial. Cline's testimony at trial included no such admission. Moreover, even if Cline's testimony included an admission that Cline gratuitously undertook a duty to take the guns, it does not address the first element as discussed above: that Cline knew his conduct was necessary to Gerald's safety.

Because there was not substantial evidence of Cline's knowledge that his aid was necessary to Gerald's safety, the trial court did not abuse its discretion by refusing to instruct the jury on this claim. *Gammon*, 104 Wn.2d at 616. The estate failed to present evidence sufficient to persuade a fair-minded person of the truth of that element of the claim. *Nationscapital Mortg. Corp.*, 133 Wn. App. at 738.

C.    *Foreseeability Instruction*

The estate argues that the trial court erred by providing instruction 11.5, regarding the claim of negligent entrustment, because the instruction contained an erroneous statement of the law. We disagree.

The challenged instruction reads:

> A person is liable of negligent entrustment if:
> (a) that person knew, or should have known in the exercise of ordinary care, that the person to whom materials were entrusted was reckless, heedless, or incompetent; and
> (b) that person could have foreseen the subsequent acts of that person to whom materials were entrusted.
> *When the foreseeability of some harm stems from past actions or conduct, then it must be conduct so repetitive as to make its recurrence foreseeable.*

CP at 2258 (emphasis added). The estate takes issue with the final sentence, regarding

repetitiveness. The estate argues that Washington follows *Restatement (Second) of Torts* § 390

(1965) on negligent entrustment. That *Restatement* section provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

RESTATEMENT (SECOND) OF TORTS § 390 (1965). Thus, the estate argues that instruction 11.5

misstates the law of negligent entrustment because it requires an erroneous extra element beyond

the requirements of the *Restatement*: that the past actions or conduct be repetitive.

The estate concedes that Washington case law appears to recognize the repetitiveness

element. Br. of Appellant at 43 (citing *Mejia v. Erwin*, 45 Wn. App. 700, 705-06, 726 P.2d 1032

(1986)). In *Mejia*, we considered whether a driver's parents were liable for negligently

entrusting a car to him by paying for the car rental. 45 Wn. App. at 701. The driver was later

involved in an accident while driving the rented car, in which accident he killed another driver

and injured that driver's passenger. 45 Wn. App. at 701. The parents allegedly knew that their

son had several previous driving infractions. 45 Wn. App. at 702. Giving rise to the language in

the jury instruction at issue here, we held that "'when the foreseeability of harm stems from past

conduct, it must be conduct *so repetitive* as to make its reoccurrence foreseeable.'" 45 Wn. App.

at 705-06 (quoting *Curley v. General Valet Serv., Inc.*, 311 A.2d 231, 241 (Md. 1973)).

The estate argues that the repetitiveness element discussed in *Mejia* is merely dicta, and

that it was an incorrect statement of the law in instruction 11.5. The estate argues that the

relevant portion of *Mejia* is dicta because it comes after a dispositive portion of the opinion,

which holds that merely paying for a car rental is not "entrustment" of a car. Br. of Appellant at

43; *Mejia*, 45 Wn. App. at 703. *Mejia* makes the alternative holding that "[e]ven if the transaction here could have been considered entrustment of an automobile," the parents were not negligent. *Mejia*, 45 Wn. App. at 704. Thus, the estate argues that the relevant portion of *Mejia* is dicta rather than a statement of binding authority because it was not necessary to the court's decision that the parents were not liable for negligent entrustment. But by the opinion's plain terms, the holding regarding negligence is a second basis for the affirmance of summary judgment; it is not dicta. 45 Wn. App. at 704. Thus, the relevant portion of *Mejia* is a statement of law.

Furthermore, subsequent Washington cases have followed *Mejia*'s statement about repetitiveness. *See Hickle v. Whitney Farms, Inc.*, 148 Wn.2d 911, 925, 64 P.3d 1244 (2003) (citing *Mejia*, 45 Wn. App. at 704-05, for the proposition that liability for negligent entrustment is "based on the foreseeability of harm when one knew or should have known that the person to whom materials were entrusted was unable to safely handle the materials"). Other recent cases have recited the relevant portion of *Mejia* as a statement of the law of negligent entrustment. *House v. Estate of McCamey*, 162 Wn. App. 483, 489-90, 264 P.3d 253 (2011) ("When the foreseeability of some harm stems from past actions or conduct, then it must be 'conduct so repetitive as to make its recurrence foreseeable.'") (internal quotation marks omitted) (quoting *Mejia*, 45 Wn. App. at 706). Thus, the holding of *Mejia* is presently the law. Consequently, the estate fails to show that instruction 11.5 was improper for inadequately stating the law.[5] *Capers*, 91 Wn. App. at 142.

---

[5] The estate appears to argue that the challenged instruction was deficient for preventing it from arguing its theory of the case. Br. of Appellant at 45 ("The trial court's Instruction No. 11.5 included language which heightened Plaintiffs' burden of proof in this case, precluded plaintiff from arguing their theory of the case, and was an erroneous statement of the law.") But the estate cites no authority for the proposition that this instruction prevented it from arguing its

## II. EVIDENCE

The estate argues that the trial court erred by excluding evidence of prior instances when Clarence "pulled guns on friends and family members." Br. of Appellant at 46. The estate also argues that the trial court erred by admitting evidence of Gerald's alcohol use. We disagree.

A. *Standard of Review*

We review the grant or denial of a motion to exclude certain evidence for an abuse of discretion. *Hizey v. Carpenter*, 119 Wn.2d 251, 268, 830 P.2d 646 (1992). Likewise, we review a denial of a motion in limine for abuse of discretion. *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 91, 549 P.2d 483 (1976). The burden to prove an abuse of discretion falls on the appellant. *Hernandez v. Stender*, 182 Wn. App. 52, 58, 358 P.3d 1169 (2014).

Evidence is admissible only if it is relevant. ER 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Additionally, under ER 403 the trial court may exclude evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Thus, when deciding relevance, the trial court weighs whether the testimony would have a tendency to mislead, distract, waste time, confuse, or impede the trial, or be too remote either as to the issues or in point of time.

---

theory of the case, nor does it provide supporting argument or cites to the record. Thus, we do not consider this argument. RAP 10.3(a)(6) (requiring an appellant to include "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record").

B.    *Exclusion of Gun Evidence*

The estate argues that the trial court erred by excluding evidence of previous instances when Clarence pulled guns on people.  It argues that the trial court erred in concluding that these incidents were too remote because "they were highly relevant to the question of what Mr. Cline knew or should have known with respect to Clarence's dangerous propensities particular, as it relates to firearm usage [sic]."  Br. of Appellant at 48.  We disagree.

The evidence was not relevant.  To be relevant, the evidence would have to have some likelihood of proving that Cline knew either that Clarence posed a danger to Gerald (for purposes of negligent performance of a gratuitous undertaking) or that Cline knew Clarence was incompetent in 2007 (for purposes of negligent entrustment.)  The evidence at issue here— Rhone's proposed testimony that she had heard that Clarence pulled guns on people—did not tend to show Cline's knowledge of Clarence's dangerousness to Gerald or his incompetence in 2007; rather, it tended to show that Clarence had indeed pulled guns on family members. Therefore, it was irrelevant: whether other family members had heard that Clarence pulled guns has no bearing on whether Cline knew that this had happened.  In other words, the only relevant evidence pertaining to Clarence's prior gun use was evidence showing what Cline knew or did not know, and Rhone did testify that she told Cline about Clarence's violence.  Other evidence had no relevance to the negligence claims here.

Because the estate sought to prove that the Federson and Baughn incidents occurred, but could not prove that they were relevant to Cline's knowledge, these incidents were irrelevant and inadmissible.  Thus, the trial court had tenable grounds and reasons for excluding them.

C.      *Alcohol Evidence*

The estate argues that the trial court erred by admitting evidence that Gerald used alcohol on the night of his death.[6]  We disagree.[7]

It appears that the estate is arguing that the trial court abused its discretion by failing to grant a pretrial motion in limine to exclude alcohol evidence.  The estate alludes to this argument in its argument section, but does not assign error to the trial court's adverse ruling on its motions in limine.  The estate argues that alcohol evidence is highly prejudicial, but it does not argue or demonstrate that any prejudice resulted from any alcohol evidence in this trial.  Moreover, the estate does not cite the record to show when any alcohol evidence came before the jury.  Instead, this argument consists exclusively of citations to two cases in which courts have acknowledged the potentially prejudicial nature of alcohol evidence.  Because the estate fails to cite the record and provide argument about why the trial court abused its discretion by denying the motion in

---

[6] The estate assigns error to the trial court's refusal to grant its summary judgment motion to dismiss the alcohol defense, but the estate concedes in its argument that "generally a denial of summary judgment cannot be appealed following a trial, if the denial is based upon a determination that material facts are in dispute."  Br. of Appellant at 52 ("Given the absence of authority to review the underlying erroneous denials of summary judgment . . . it is Plaintiffs' position that the Appellate Court should consider what happened in determining if 'substantial justice has been done' and/or whether or not there has been cumulative error.").  We take up the estate's cumulative error argument below.  Otherwise, we decline to consider this summary judgment argument.  RAP 10.3(a)(6).

The estate also argues that the trial court abused its discretion by admitting alcohol evidence during trial.  But the estate provides no citations to the record to show where alcohol evidence came in, whether the estate objected to it, or what the trial court's rulings were.  Thus, we decline to consider this argument.  RAP 10.3(a)(6).

[7] Cline argues that this argument is moot because the alcohol evidence was relevant only to the question of proximate cause, which the jury did not reach.  An issue is not moot if we can provide a party with effective relief by resolving the issue.  *West v. Thurston County*, 144 Wn. App. 573, 580, 183 P.3d 346 (2008).  We could provide effective relief from any erroneous evidentiary or summary judgment errors by granting a new trial, so this issue is not moot.

20

limine in *this* case, we do not review this argument.[8]  RAP 10.3(a)(6).  The estate fails to prove that the denial of the motion in limine prejudiced the jury's verdict regarding Cline's negligence in any way.

### III.  MISCONDUCT OF COUNSEL

The estate argues that it deserves a new trial due to the "misconduct" of Cline's counsel. We disagree.

A.      *Standard of Review*

CR 59(a)(2) allows the trial court to grant a new trial where the prevailing party's misconduct materially affects the losing party's substantial rights.  *Teter v. Deck*, 174 Wn.2d 207, 222, 274 P.3d 336 (2012).  To prevail, the losing party must show that "(1) the conduct complained of is misconduct, (2) the misconduct is prejudicial, (3) the moving party objected to the misconduct at trial, and (4) the misconduct was not cured by the court's instructions."  *Teter*, 174 Wn.2d at 226.  We review a trial court's decision on a motion for a new trial under CR 59(a)(2) for an abuse of discretion.  *Teter*, 174 Wn.2d at 222.  In this context, we apply a specialized test for an abuse of discretion and ask whether the misconduct has created "'such a feeling of prejudice . . . in the minds of the jury as to prevent a litigant from having a fair trial.'"  *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000) (internal quotation marks omitted) (quoting *Moore v. Smith*, 89 Wn.2d 932, 942, 578 P.2d 26 (1978)).

---

[8] We address the estate's argument that this alcohol evidence contributed to cumulative error below.

B.      *Alleged Vandalism*

As its first alleged instance of misconduct, the estate points to Cline's counsel's remarks suggesting that Gerald vandalized Clarence's vehicle on the night of Gerald's death.[9]  The estate claims that it objected to this statement, but does not cite the record to demonstrate that it did object.  Thus, we reject this argument: the estate fails to demonstrate misconduct, much less prejudicial misconduct rising to the level of requiring a new trial.  *Teter*, 174 Wn.2d at 226.

C.      *Alcohol Evidence*

Second, the estate argues that Cline's counsel committed misconduct in some way while knowing "that there is no competent or admissible evidence that alcohol in any way came into play with respect to the events leading up to Gerald's death."  Br. of Appellant at 55.  Confusingly, the estate fails to say what Cline's counsel *did* to constitute misconduct: the estate may be arguing that Cline's counsel should have voluntarily dismissed its alcohol defense prior to the close of evidence, but it does not say.  The estate appears to argue that the trial court's directed verdict dismissing the alcohol defense at the close of evidence is conclusive proof that there was no evidence that alcohol usage contributed to Gerald's death.  But the estate does not provide factual support for the proposition that Cline's counsel "knew" there was no such evidence, nor does it show that (1) Cline's counsel committed misconduct, (2) the alleged misconduct was prejudicial, (3) the estate objected to any such action, or that (4) the trial court's instructions would not have cured the prejudice.  Accordingly, this claim fails.  *Teter*, 174 Wn.2d at 226.

---

[9] The estate does not cite the record in its facts section nor in its analysis section to demonstrate when this statement occurred.  Nor could we find any such statement in the record.

D.    *Benadryl*

Third, the estate argues that Cline's counsel committed misconduct by "attempt[ing] to argue" in closing that "Benadryl could have been a cause of Clarence's actions . . . [w]ithout a scintilla of proof that Clarence owned or even took the medication; nor any expert testimony regarding causation."  Br. of Appellant at 55.  The estate did not object to any remarks about Benadryl during Cline's closing argument.  Thus, the estate fails to meet its burden of showing that it objected to the misconduct at trial.  *Teter*, 174 Wn.2d at 226.

Moreover, these remarks were not misconduct: the jury was permitted to infer from the photo of an open box of Benadryl on Clarence's bedside table that Clarence took Benadryl.  A doctor testified that Benadryl "interferes with brain function" in patients with early dementia symptoms, and can "cause acute or worse confusional states."  6 VRP (Sept. 24, 2013) (Defendant) at 106.  The jury could have drawn an inference that Clarence took the Benadryl on his nightstand and became very confused before shooting Gerald.  Arguing that the jury may weigh circumstantial evidence is not misconduct, and the estate provides no authority to suggest that it is.  This claim fails.  *Teter*, 174 Wn.2d at 226.

E.    *Other Family Members' Duty*

Fourth, the estate argues that Cline's counsel "repeatedly asked confusing and misleading questions particularly of Plaintiffs' witness Sunny Rhone suggesting that she and other family members had a duty to 'do something' had there been a continuing concern regarding Clarence's ownership of guns."[10]  Br. of Appellant at 55, 25-26 (citing 4 VRP at 75-106).  Again, the estate

---

[10] To the extent the estate attempts to argue in a blanket fashion that Cline's counsel argued that other family members had a duty to act, we do not look beyond the estate's record cites.  In other words, we do not identify any potential instances in which Cline suggested that the other family members had a duty to act, which are not clearly cited in the brief.  Thus, we restrict our discussion to those record cites the estate provides.

fails to provide authority supporting its argument that (1) these remarks constitute misconduct, that (2) the misconduct was prejudicial, and (3) that the trial court's instructions did not cure the prejudice. The claim fails. *Teter*, 174 Wn.2d at 226.

F.      *Impeachment Based on Misdemeanor*

Fifth, the estate argues that Cline committed misconduct in three ways during cross-examination of Clarence's tenant, Boldosser. The estate argues that Cline improperly impeached Boldosser based on a misdemeanor conviction under ER 609. The estate also contends that Cline committed misconduct by stating that Boldosser possessed five ounces of cocaine, when in truth he possessed only five grams. Finally, the estate argues that Cline's counsel violated ER 609 by cross-examining Boldosser about an outstanding warrant. We disagree.

ER 607 allows impeachment of witnesses generally. More specifically, ER 609 allows a party to attack the credibility of a witness through the witness's past conviction for a felony, but not a misdemeanor.

Again, the estate fails to carry its burden of establishing party misconduct. The estate does not demonstrate why impeaching Boldosser with the reasons for which Clarence evicted him constituted misconduct. Furthermore, the estate's argument appears to rest on the assumption that the jury was familiar with ER 609, and inferred from the fact that Cline impeached Boldosser that he must have had a felony. This is an unreasonable assumption. Nor does the estate establish why any prejudice was not cured by the trial court's curative instructions. Accordingly, its claim fails. *Teter*, 174 Wn.2d at 226.

G.      *Allegations about Clarence's Gun Use*

In the section of its brief regarding the trial court's exclusion of evidence that Clarence pulled guns on people, the estate appears to argue that Cline's counsel committed misconduct by

24

relying on the lack of admissible evidence of Clarence's use of guns to demonstrate that Cline could not have known Clarence was dangerous. Once again, the estate fails to carry its burden of demonstrating misconduct. Cline asked witnesses whether they personally had seen Clarence threaten others with guns; no one had. Witnesses such as Rhone could merely testify that they had heard about such instances. The estate does not demonstrate why eliciting or arguing this fact constitutes misconduct. Moreover, the estate did not object to these statements in closing. Thus, this claim fails. *Teter*, 174 Wn.2d at 226.

## IV. CUMULATIVE ERROR

The estate argues that cumulative error warrants a new trial, and that the trial court erred by failing to grant a new trial on this basis. We disagree.

Under CR 59(a)(9), a trial court may grant a new trial when "substantial justice has not been done" in the trial court. As stated above, we review the trial court's denial of a motion for a new trial for an abuse of discretion. *Teter*, 174 Wn.2d at 222.

In support of this argument, the estate cites *Storey v. Storey*, in which we affirmed the trial court's grant of a new trial based on the prevailing party's misconduct. Br. of Appellant at 52 (citing 21 Wn. App. 370, 375-77, 585 P.2d 183 (1978)); *see also* Br. of Appellant at 59 (citing *Olpinski v. Clement*, 73 Wn.2d 944, 951, 442 P. 2d 260 (1968)). In *Storey*, we noted that "[t]he cumulative effect of many errors may sustain a motion for a new trial even if, individually, any one of them might not." 21 Wn. App. at 374. But both *Olpinski* and *Storey* reviewed the trial court's decision to *grant* a new trial, whereas here we review the trial court's decision to *deny* a motion for a new trial. "[W]here the claimed grounds for a new trial involve the assessment of occurrences during the trial and their potential effect on the jury, we will accord great deference

to the considered judgment of the trial court in ruling on such a motion." *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 226, 562 P.2d 1276 (1977).

Below, the estate argued that the trial court should grant it a new trial due to (1) the failure to instruct the jury on negligent performance of a gratuitous undertaking; (2) the estate's belief that the jury verdict was contrary to the evidence; (3) Cline's misconduct regarding the alcohol defense, appearing to allocate fault to Rhone, mentioning Boldosser's criminal history, and relying on the lack of gun evidence; and (4) because substantial justice had not been done.[11] As stated above, we review the trial court's decision to deny a motion for a new trial for an abuse of discretion. The estate did not provide a transcript of the hearing at which the court considered this motion. The estate provides no argument demonstrating why the trial court abused its discretion in failing to grant a new trial after considering the stated reasons and hearing argument. The trial court has broad discretion to determine whether substantial justice has been done, and here, it apparently determined that substantial justice had been done. *Teter*, 174 Wn.2d at 222. We do not reverse that decision because the estate has failed to show that it constituted an abuse of discretion. As stated above, the estate failed to object to many of these alleged errors, and it fails to show misconduct or that the trial court's instructions could not have cured the prejudice of others.

Furthermore, to the extent the estate argues that new reasons exist for us to grant it a new trial based on cumulative error, we disagree. The estate argues now, but did not argue in its motion below, that it deserves a new trial due to the argument about alleged damage to Clarence's vehicle and due to the trial court's instruction on negligent entrustment.

---

[11] For the first time in its reply brief in support of this motion, the estate argued that Cline's use of Benadryl evidence was misconduct, and that the case was "tainted" with "explosive" alcohol evidence. CP at 2403-09.

26

In criminal cases, the cumulative error doctrine applies when several trial errors occurred which, standing alone, may not be sufficient to justify a reversal, but when combined together, may require a new trial. *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). But the estate cites no authority for applying the cumulative error doctrine in a civil case, nor are we aware of any. Instead, as stated above, we review the trial court's ruling on a motion for a new trial for an abuse of discretion. Where there was no motion for a new trial on these bases below, we have nothing to review.

We affirm the verdict.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.