# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JASON MCNEAL and HEATHER MCNEAL, | No. 79197-4-I |
| Respondents/Cross Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| GENIE INDUSTRIES, INC., a Washington corporation, | |
| Appellant/Cross Respondent, | |
| JOHN DOES, | |
| Defendants. | |

APPELWICK, J. — McNeal sued Genie, alleging he was injured by a defective design of one of its lifts. Genie argues Texas law required the trial court to enter a directed verdict because McNeal did not present evidence of similar accidents. It argues the trial court erred in excluding evidence that Genie was not aware of similar accidents. It argues the trial court erred in excluding evidence of design testing and improperly imposed discovery sanctions. We affirm.

FACTS

Jason McNeal rented a Genie-34/20 lift to trim tree branches around his home in Silsbee, Texas. Genie Industries, Inc. (Genie) markets these lifts as safe for use by a single operator. To that end, there are two sets of controls on the lift, one on the ground and one in the lift platform itself. This allows a single user in

the lift platform to operate the lift without assistance. The lift also has an emergency stop switch on the ground controls. When the emergency stop switch is depressed, it disconnects the circuit until the switch is pulled back out. There is no override in the platform for the emergency switch. The predecessor model to the 34/20 lift protected the ground controls with a cover. The 34/20 model does not have a cover for the ground controls.

McNeal utilized the lift as marketed, by himself, utilizing the controls in the lift platform. He began work at 8:15 a.m. His wife was at work and not expected to be home until around 7:30 or 8:00 p.m. He trimmed tree branches one at a time and watched them fall to the ground. After cutting one branch, McNeal observed it fall towards the ground controls and strike the emergency stop switch. As soon as the switch was activated, all of McNeal's controls in the lift platform stopped working. He tried to use the controls, but they did not work. McNeal was aware that his controls would not start working again until the emergency stop switch was released. He realized at this point that he had accidently left his cell phone in his truck after taking a phone call earlier in the day.

McNeal was stranded about 30 feet in the air. He remained in the lift for about 30 to 45 minutes before deciding to attempt to get out. He considered trying to climb over to the tree he was working on, but he did not think he would be able to make it. He also considered attempting to climb down the lift itself, but he was concerned he would fall on his back. He eventually decided that his safest option was to lower himself out of the lift platform and step on to the roof of a nearby structure called a "cook shed." After lowering himself out of the platform, he

2

realized the roof was too far away to step onto. He instead tried to pull himself back up onto the lift platform.

While trying to pull himself up, McNeal fell straight down to the ground. He sustained significant injuries to his legs but was able to crawl to his truck and call for help. An ambulance arrived and took McNeal to the hospital.

McNeal required 12 surgeries for his injuries. There is still a 70 to 80 percent chance that his right leg will need to be amputated. There is a 20 to 30 percent chance that his left leg will need to be amputated.

McNeal sued Genie in King County Superior Court. Though the accident occurred in Texas, Genie is a Washington corporation whose principal place of business is in King County. McNeal alleged several causes of action under Washington law based on the defective design of the lift. His primary allegation was that the lift was defective because the unprotected emergency stop switch created a situation where an individual user could become stranded when the switch was depressed. Prior to trial, Genie moved for a determination that Texas law should apply to McNeal's product liability and consumer protection claims. The trial court granted the motion. McNeal moved for an order in limine prohibiting the introduction of any undisclosed evidence, witnesses, and opinions. Genie did not oppose the motion and the trial court subsequently granted it. McNeal also moved for an order that Genie be precluded from presenting evidence that there were no other accidents involving the emergency stop switch on its lifts. The trial court granted that motion.

At trial, a representative for Genie began to testify regarding durability testing performed on the lift. Counsel for McNeal and the witness had the following exchange:

A. You know, this machine, part of the testing we do all kinds of durability testing. We drive the machine up to North Bend. We took it up roads to see how the machine handles. And the wires are connecting this thing, how they're secured. And so they're secured in a manner that, during normal use, we don't have wires short out under normal use.

Q. That's interesting. Why didn't [you] provide any of that testimony in this case? We requested testing from you guys –

Mr. Harrison: Judge, we're going to need to object because there is -- what he's saying is not quite accurate. We offered to provide things if they would sign a confidentiality provision.

McNeal asked the court to instruct the jury that it could draw a negative inference from the fact that Genie had not produced documentation of the referenced testing during discovery. The issue arose out of a discovery request for production of documents relative to testing on the lift. While Genie provided some documentation, it refused to turn over other documentation unless McNeal would agree to a confidentiality provision. Genie never filed for a protective order and McNeal did not request the documentation again. After some discussion, the trial court refused to instruct the jury on drawing a negative inference. However, in light of the pretrial order in limine, the trial court excluded evidence relative to testing and admonished Genie not to discuss any testing that was done on the product, or any design changes that were implemented as a result of testing.

At the conclusion of McNeal's case, Genie moved for a directed verdict. The trial court denied that motion.

A jury found that a design defect in the lift was a "producing cause of the occurrence in question." It also found McNeal was contributorily negligent. It assigned 51 percent of the fault to the design of the lift and 49 percent of the fault to McNeal. The jury determined McNeal's damages totaled $19,190,027. After reducing for McNeal's negligence, the trial court awarded McNeal a verdict of $9,786,914. Genie thereafter filed a CR 59 motion for a new trial. It argued that a new trial was warranted because the court should not have prohibited Genie from presenting evidence regarding its design testing and hazard analysis. It also argued that the trial court should not have prohibited Genie from presenting evidence of a lack of prior accidents. The trial court denied the motion.

Genie appeals. McNeal asserts a conditional cross appeal, arguing that the trial court erred in not applying Washington tort law.

## DISCUSSION

Genie makes five arguments. First, it claims the trial court erred in refusing to enter judgment as a matter of law in its favor. Second, it argues the trial court abused its discretion in excluding evidence showing a lack of similar accidents with the lift. Third, it claims the trial court abused its discretion by excluding evidence of design testing and risk analysis on the basis that it violated an in limine ruling excluding evidence not disclosed during discovery. Fourth, it claims the trial court abused its discretion in excluding evidence of design testing as a discovery sanction. Last, it argues the trial court abused its discretion by denying Genie's

motion for a new trial based on the excluded evidence. McNeal argues that if there is a new trial, the court should apply Washington law rather than Texas law.[1]

I.    Judgment as a Matter of Law

Genie argues that the trial court erred in denying its motion for a directed verdict. Specifically, it argues that Texas law required McNeal to present evidence of likelihood of a similar incident, which he did not do.

When reviewing a decision on judgment as a matter of law, we apply the same standard as the trial court. Schmidt v. Coogan, 162 Wn.2d 488, 491, 173 P.3d 273 (2007). A trial court may grant judgment as a matter of law for a party if, viewing the evidence in the light most favorable to the nonmoving party, the nonmoving party has failed to present a sufficient evidentiary basis for a ruling in their favor. CR 50(a)(1); Guijosa v. Wal Mart Stores, Inc., 144 Wn.2d 907, 915, 32 P.3d 250 (2001). Judgment as a matter of law is appropriate when there is no competent and substantial evidence upon which a verdict can rest. Id. Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise. Id.

Genie relies primarily on Genie Industries Inc. v. Matak, 462 S.W.3d 1 (Tex. 2015). There, Matak was killed when a different model Genie lift tipped over while he was on its lift platform. Id. at 6. The lift at issue had four removable legs that had to be in place in order for the lift to operate. Id. at 4. These legs provided stability that prevented the lift from tipping. Id. However, to increase the portability

---

[1] Because we affirm the judgment we need not address McNeal's conditional cross appeal.

of the lift, the legs could be removed when the lift was not in use. Id. In order to make the work go faster, Matak and his coworkers attempted to move the lift while in its full extended position with Matak inside, despite clear warnings on the lift that this could cause the lift to tip over. Id. at 4, 6. As soon as they attempted this, the lift tipped over, killing Matak. Id. at 6.

A jury found that the lift was defectively designed. Id. The Texas Supreme Court reversed and, in so doing, articulated the applicable standards for product liability claims in Texas. Id. at 6-7, 12. Texas law imposes liability only for defective products that are "'unreasonably dangerous to the user or consumer.'" Id. at 6 (quoting McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 788–789 (Tex.1967)). In order to succeed on such a claim, a plaintiff must show (1) the product was defectively designed so as to render it unreasonably dangerous, (2) a safer alternative design existed, and (3) the defect was the producing cause of the injury for which the plaintiff seeks recovery. Id. (quoting Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 311 (Tex. 2009)). A product is "unreasonably dangerous" under Texas law if its "risk outweighs its utility." Id. That determination is made by weighing five factors:

> "(1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use, (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive, (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs, (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions, and (5) the expectations of the ordinary consumer."

7

Id. at 9-10 (quoting Timpte Indus., 286 S.W.3d at 311).

Genie argues that the language in factor (1) that requires a product's utility to be "weighed against the gravity and likelihood of injury from its use" requires a plaintiff to show evidence of likelihood of similar accidents to prevail on a claim. Br. of Appellants, 22-23. Specifically, the court observed,

> The risk is that a user will ignore the instructions in the user manual, the signs on the lift itself, and the danger, obvious to even the most casual observer that the lift will tip if the outriggers are removed when a person is on a fully elevated platform. So obvious is the risk of danger from misuse of the lift that the evidence does not reflect a single other accident involving a fully extended 40' lift. Church employees testified that they sometimes released the outriggers with the platform elevated, but only if a worker could jump down to avoid injury. The plaintiffs introduced evidence of three other similar accidents, but in none is there an indication that the platform was fully elevated. Genie's witness testified that there may have been eight or ten other instances "of not doing it right" when using the lift, but again, none bear any indication that they, too, involved a fully elevated platform. The undisputed evidence is that Genie has sold more than 100,000 AWP models lifts all over the world, which have been used millions of times. But the record does not reflect a single misuse as egregious as that in this case.

Id. at 11-12. Genie argues the Matak court reversed "because the plaintiff failed to demonstrate any likelihood of a similar incident."

Genie argues the same result must follow here, because McNeal has produced no evidence of likelihood of other similar incidents. But, Matak does not stand for the proposition that a plaintiff must introduce evidence of prior similar incidents to prevail on a design defect claim. That is not what the language of the test requires. "Likelihood" is not merely viewed looking backward in time. If proof of a prior similar incident were required, the causation for the first case would never

reach the merits. Failure to produce evidence of prior similar incidents does not require the trial court to grant judgment as a matter of law.

The gravity and likelihood of injury must be balanced against utility. Id. at 9-10. In support of its motion for judgment as a matter of law, Genie argued that McNeal had produced "no evidence whatsoever" that an injury of this type was likely. It argued that because there was no evidence there was a likelihood of injury, the risk could not outweigh the utility. McNeal countered that Genie's representative admitted that there was no utility to having the emergency stop switch uncovered. Thus, any likelihood of injury would outweigh the utility of the design. McNeal provided evidence of severe injuries from being stranded high in the air when the emergency stop switch was activated. This established both the substantial gravity of risk of injury and some likelihood of the risk of injury.

Viewing the evidence in the light most favorable to McNeal, Genie was not entitled to judgment as a matter of law. The trial court did not err in denying Genie's motion.

## II. Evidence of Lack of Similar Accidents

We review evidentiary rulings and rulings on discovery sanctions for an abuse of discretion. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668, 230 P.3d 583 (2010); Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). An abuse of discretion occurs when a decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Mayer, 156 Wn.2d at 684. A decision rests on untenable grounds or untenable reasons if the trial court relied on unsupported facts or applied the wrong legal standard. Id.

Genie claims the trial court erred in excluding testimony about the lack of other similar accidents with the lift. It claims that two Genie employees were prepared to testify that Genie was aware of no other incident where the emergency stop switch on a lift was accidentally activated.

In support of his motion in limine to exclude this evidence, McNeal argued that, even if such evidence were relevant, Genie had no system in place to gather information about such accidents. Instead, it apparently relied on its dealers to self-report accidents. Genie contested this at the hearing, saying, "[C]ontrary to what counsel just said, there are procedures in place to try and find out how these products are used."[2] The trial court agreed with McNeal. The court observed, "The Court is neither going to allow any extrinsic evidence of other accidents or any extrinsic evidence of lack of accidents. Lack of an accident doesn't mean that somehow it doesn't happen. It means that somehow it's not reported. . . . It doesn't mean that it didn't happen. It means you have no knowledge of it, that you have no known incidents of it." The court went on to analogize this sort of evidence to prior bad acts, saying, "I liken this to prior bad acts. I liken this to -- and frankly the you know 'Well, your Honor, in 25 years, they have never committed a crime, maybe they didn't commit one this time either.'"

At trial, Genie again sought to introduce evidence that Genie was aware of no similar accidents with the lift. As an offer of proof, it offered testimony by Chad Wicklund, a design engineer at Genie. He testified that he was unaware of any other accidents similar to McNeal's ever taking place. He did not testify to Genie's

---

[2] Genie now describes this statement as an "offer of proof."

system for learning about such accidents. And, he admitted that Genie did not learn of McNeal's accident until this lawsuit. The trial court again ruled that Genie could not offer evidence that Genie was unaware of other similar accidents.

Genie argues that the rule excluding prior bad acts, ER 404(b), is inapplicable here, so the trial court applied the wrong legal standard and therefore abused its discretion. But, the evidence was not excluded under ER 404(b), so whether the attempted analogy is apt or not is of no consequence.[3] The "offer of proof" at the motion hearing was saying there were "procedures in place to learn how these products are used." The offer of proof at trial did not describe a system for tracking accidents. Rather, it described that a single Genie employee was unaware that any such accidents had occurred, until the underlying lawsuit was filed. On this record, that employee's lack of knowledge is not probative of the assertion that no accidents occurred. The testimony was properly excluded under ER 403.

The trial court did not abuse its discretion by excluding the evidence that Genie lacked knowledge of similar accidents.

III.    Exclusion of Testing Evidence

Genie argues the trial court abused its discretion in striking testimony and excluding evidence of design testing and risk analysis on the basis that Genie

---

[3] A more apt illustration might be to testifying about a defendant's criminal history. The testimony of a witness relying on the state-maintained criminal history database may be probative of criminal history. The database provides the reliability of the information. A witness testifying merely that they have not heard of the defendant committing any similar crimes is not similarly probative of criminal history.

violated an in-limine ruling excluding evidence not disclosed during discovery. It argues that doing so on that basis was error because the trial court explicitly found that Genie's discovery violation was not willful, and because the trial court failed to consider less serious sanctions.

Discovery sanctions are within the sound discretion of the trial court. Teter v. Deck, 174 Wn.2d 207, 216, 274 P.3d 336 (2012). The court may impose only the least severe sanction that will be adequate to serve its purpose in issuing the sanction. Id. Prior to imposing a most severe sanction, the court must make a finding of the Burnet factors: (1) the discovery violation was willful or deliberate, (2) the violation substantially prejudiced the opponent's ability to prepare for trial, and (3) that the court explicitly considered less severe sanctions. Id. at 216-17 (citing Burnet v. Spokane Ambulance, 131 Wn.2d 484, 496-97, 933 P.2d 1036 (1997)). Findings regarding these factors must be made on the record, either orally or in writing. Id. at 217. Exclusion of witness testimony is a most severe sanction that mandates this showing. Id.

Prior to trial, McNeal moved for an order in limine prohibiting the introduction of any undisclosed evidence, witnesses, and opinions. Genie did not oppose the motion and the trial court subsequently granted it. The decision to grant this uncontested order was within the trial court's sound discretion. And, because this order was not contested, it was unnecessary for the court to weigh the Burnet factors at the time of the ruling in limine. The trial court did not abuse its discretion in granting the motion in limine.

12

Near the end of the McNeal's case, a Genie employee offered testimony concerning testing that had been done on the model of lift at issue. McNeal's counsel questioned why Genie had not produced any of that testimony when they requested evidence of testing. Genie's counsel objected to those statements as not accurate, implying that it had not provided anything. Genie asserted that it had produced some documents regarding testing, but that others had not been produced in discovery. Genie asserted that it offered to provide the remaining testing documents pursuant to a confidentiality agreement, but that McNeal had never followed through. McNeal asserted that under Washington law it is the party seeking protection who has the burden to obtain the protective order.

The trial court said, "We're not going to have issues, things that were not provided in discovery come out at this juncture." To the extent this was excluding evidence, Genie did not object. Instead its response was that it did not plan to do so. The trial court noted that Washington procedural law applied and noted that it had ordered in the pretrial motion in limine that evidence that was not disclosed was not going to be admitted. That order was uncontested. It announced the jury would be told to disregard the last statement made by the witness. No objection was made to this ruling.

McNeal then asked the court to instruct the jury that it could draw an adverse inference that no testing had been done since no testing documentation had been produced in discovery. Genie objected to the requested inference instruction indicating that it had not offered any documents and did not intend to do so, because it wanted them to be confidential. The trial court ruled that no testimony

would be allowed as to any testing that led to any design changes in this product. The trial court was enforcing its order in limine, not imposing a sanction for a violation of discovery. Genie did not object at this point to exclusion of this testing evidence, nor assert that the exclusion was a sanction or that the Burnet factors applied.

Instead, Genie reminded the court that its original objection was to McNeal asserting that Genie had not produced evidence of testing during discovery, implying that such testing had not been done. The trial court indicated it would not "let people be pounded over the head with 'you don't have these things' when these things can be produced." McNeal did not object to being limited in this manner.

McNeal, however, had also requested a negative inference instruction. Such an instruction would be a sanction akin the nonexclusive list of discovery sanctions contained in CR 37(b)(2). The trial court was mindful of the need to apply the Burnet factors to determine if a severe discovery sanction should be imposed. In doing so, it concluded that Genie had not willfully violated the discovery rule, and denied the request for the negative inference instruction.

The trial court announced it would instruct the jury that the objection made prior to releasing them, which was made by Genie to McNeal's comment on failure to produce documents in discovery, was sustained. It would further instruct the jury that the testimony about alleged testing was stricken and was to be disregarded in its entirety. In addition, it would instruct that to the extent there has been testimony or suggestions regarding design testing, risk assessments or

14

design changes, that is also stricken and to be disregarded. Genie objected that the instruction was a comment on the weight of the evidence.[4] The jury was brought in and instructed as intended.

Genie argues the trial court incorrectly applied the Burnet factors when it excluded the design testing evidence, because it explicitly found that Genie's discovery violation was not willful, and because the trial court failed to consider less serious sanctions. We disagree. Genie did not preserve a Burnet claim. It did not object to the trial court enforcing the order in limine and excluding that evidence in the trial. Instead, Genie indicated it did not intend nor want to introduce the excluded evidence. Genie argued only that McNeal's use of the issue be limited. It succeeded. The trial court ruled that the order in limine would apply to either party's discussing design testing, or lack thereof.

Moreover, the design testing evidence was not excluded as a sanction for a discovery violation. It was excluded because enforcement of the court's pretrial order on a motion in limine required the exclusion of evidence not produced in discovery, an order to which Genie did not object. No Burnet analysis was necessary to enforce the order in limine.

The sanction for which the Burnet analysis applied was the negative inference instruction. Once the trial court concluded that the testimony about testing was not a willful violation, the court denied the request under Burnet. No discussion of lesser sanctions or prejudice was necessary.

The trial court did not abuse its discretion enforcing its order in limine.

_____

[4] Genie does not argue this on appeal.

15

IV.    Motion for a New Trial

Genie argues the trial court abused its discretion in denying its motion for a new trial.  That motion was based on the trial court's alleged errors excluding evidence of a lack of similar incidents and design testing.  We conclude that the trial court did not err in either regard.  Accordingly, the trial court did not abuse its discretion in denying the motion.

We affirm.

_Appelwick, J._

WE CONCUR:

_Bowman, J_          _Leach, J._